## WALKER *et. als.* v. HALLETT.

Ala.
1 379
93 417
1 379
105 342
1 379
122 564

1. A supplemental bill properly so called, is a bill brought for any new matter, arising since the filing of the original bill, and before it is brought to a hearing.

2. It is filed by leave of the court, but the failure to obtain such leave, as it is granted *ex parte*, and as a matter of course, will not always be a fatal objection ; the objection cannot be made in this court, by a party who is in contempt, nor at the hearing, if not objected to sooner.

3. Matters which existed at the time of filing the original bill, but omitted from ignorance, or mistake, is the proper subject of an amendment of the original bill.

4. A party to a bill in chancery, is one against whom process is prayed.

5. A prayer that the " Branch of the Bank of the State of Alabama at Mobile, be made a party to the bill, by serving a copy of the same on *John B. Norris*, the president thereof," though not very formal, sufficient to evince the intention to make the bank a party.

6. But in such a case, the subpœna must issue to the bank; and if issued to its president, commanding *him* to appear and answer a judgment *pro confesso*, cannot be taken against the bank, for want of an answer.

7. The president of a bank, or other officer of a corporation, may be made a party to a bill in chancery, and required to answer upon oath.

8. *Resident* infant defendants to a bill in chancery, must be served with process ; which, if they are of tender years, may be executed on their guardian or some of their near relations : *non-resident* infants must be notified of the pendency of the suit by publication, as in the case of adults.

9. Infants above the age of fourteen years, should be consulted in the appointment of a *guardian ad litem*, if not attended with too much trouble or expense, as to which the chancellor will exercise a sound discretion.

10. The court may appoint *guardians ad litem* to *non-resident* infants ; but no such guardian should be appointed in any case, until after service of process, or publication.

11. Proof should be made of the infancy of a *non-resident* defendant.

12. Competent persons should if possible be selected as *guardians ad litem*, and the court may make them reasonable compensation ; which in suits for the foreclosure of mortgages may be taxed in the bill of costs.

13. It is improper to appoint the same person *guardian ad litem*, and master in chancery.

14. The report of a master, " that it would be for the interest of the defendants to sell the estate in separate lots, if the premises can be conveniently divided," not sufficiently definite to be the foundation of a decree for the sale of the mortgaged property.

15. The report should have stated, whether the property was susceptible of division; which portion it was for the interest of the defendants, should be sold ; and should also have contained the evidence on which the report was founded.

16. A decree, which leaves it in the discretion of the master, to sell the whole, or a part, of mortgaged property, is erroneous.

17. Upon a sale being ordered, it is not error, that the master is not required to bring the money into court.

18. It is erroneous to direct successive sales, as the several instalments of a debt secured by mortgage, fall due. The decree should be for the amount then due, and the mortgaged property be directed to stand, as a security for the residue.

Error to the Chancery Court sitting at Mobile.

BILL to foreclose a mortgage, filed by the defendant in error, against Geo. J. S. Walker, Frederick Blount, and Thomas Keenan, executors, and Eliza Keenan, executrix of M. J. Keenan, dec'd., and also against Eliza Ann Keenan, Michael Keenan, and Uriah Keenan, children and heirs of M. J. Keenan, dec'd.

The bill charges, that Walker being indebted to the complainant in the sum of fifty thousand dollars, to secure the payment thereof, executed a mortgage on certain property in the city of Mobile. The debt was secured by ten promissory notes, for five thousand dollars each, dated the 1st of March, 1835, falling due successively, from one to ten years, and all except the two first, bearing interest at the rate of seven per cent. *per annum,* from the date : that if said notes were not paid as they became due, the mortgage was to become absolute; and that if after two years, default should be made in the payment of said notes, or any of them, the condition of the mortgage should be broken, and all the notes should be considered due after that time. It is admitted by the bill, that the two first notes which fell due were paid, and charged that all the remaining notes are unsatisfied.

It is further stated, that after the execution of the said mortgage, Walker sold and conveyed the mortgaged premises in fee, to Michael J. Keenan, who has since departed this life, making the defendants Blount and Thomas Keenan, his executors, and Eliza Keenan, his wife, executrix, and bequeathed his estate to his wife and children.

Walker *et als.* v. Hallett.

Process is prayed against all the defendants, that they appear and answer, &c.; that such of the children as are of the age of twenty-one years, appear and answer, &c. and that if either or all of them, are minors, that a guardian *ad litem* be appointed. The mortgage and notes, are made exhibits to the bill.

Subpœnas were returned executed on Walker, Blount, Thomas Keenan and Eliza Keenan; and not found, as to Eliza Ann Keenan, Michael Keenan, and Uriah Keenan.

On the 4th of May, 1839, a supplemental bill was filed, which charges that since the filing of the original bill, the complainant has been informed that Michael Keenan in his life time, executed a mortgage of the said premises, to the Branch of the Bank of the State of Alabama at Mobile, and prays that the bank may be made a party to the original bill, by serving a copy of the same and the supplemental bill, upon John B. Norris, Esq. the president thereof, and that he state on his corporal oath, what interest the said bank has in the said mortgaged premises; when and how that interest was acquired, and what it is, and that complainant may have the full benefit of the said suit, and proceedings therein against the said John B. Norris, president as aforesaid, and may have the same relief against said bank, as he might have had, if the bank had been a party to the original bill.   The prayer for subpœna, is that it be directed to the said John B. Norris, requiring him by a certain day, and under certain penalties, &c. to appear and answer the original and supplemental bills, as though he as such president, was a party to such original bill; and for other and further relief, &c.

The subpœna was directed to John B. Norris, Esq. President of the Branch of the Bank of the State of Alabama, at Mobile; and commanded him to appear and answer the original and supplemental bills, which was returned executed by the sheriff.

At the Spring Term, 1839, of the court on the 31st day of May, being a day of the term, the following order was made, "In this case, M. J. McRae, is appointed *guardian ad litem*, of the minor heirs of M. J. Keenan, deceased; to wit: Eliza Ann Keenan, Michael Keenan, and Uriah Keenan, and it appearing

to the satisfaction of the court, that the defendants, Michael Kee-
nan and Uriah Keenan, are *non-residents.* It is ordered, that
they appear and answer the allegations of the bill, on or before
the next term of this court, or the same will be taken as confes-
sed, as to them: and it is further ordered, that this order be pub-
lished, once a week, in a newspaper printed in the city of Mo-
bile; and *alias subpœna,* ordered to the defendant Eliza Ann
Keenan, who has not been served with process." A subpœna
issued on the 8th of August, and was returned executed 7th
September, on Eliza Ann Keenan.

On the 24th November, 1839, M. J. McRae, *guardian ad
litem* answered, denying all knowledge of the facts charged in
the bill, and requiring proof.

On the 25th day of November, 1839, a judgment *pro confesso,*
was taken against all the defendants, except Eliza Ann Keenan,
one of the infant defendants: and the order reciting as to the
other two infants, that publication had been regularly made.

On the 27th day of the same month, an order was made,
which recites, that the master came into court and made his re-
port, that in compliance with the order of reference, he caused
the complainant's solicitors to come before him, who made due
proof of the facts charged in the bill: and particularly as to the
execution of the notes, and mortgage, mentioned in the bill.
He finds that there is now due, on the mortgage, three promis-
sory notes for five thousand dollars each, and dated 1st March,
1835; that there are five other notes, yet to fall due, of the same
date, and payable in six, seven, eight, nine and ten years after
date, each for the sum of five thousand dollars, and that the
whole of the notes aforesaid, those not due, and those which are
due, carry interest at the rate of seven per cent. *per annum,* from
date; and that, by the express stipulation of the parties, the
whole of the notes were to become due on the failure to pay any
one, at maturity: and he, therefore, finds, that there is due forty
thousand dollars, for principal, and thirteen thousand three hun-
dred dollars, for interest—on said notes, up to the first of
December, 1839. He further finds, that the premises are scarce
sufficient to pay the debt, and that it would be to the interest of

the defendants to sell the premises in separate lots, if the premises can be conveniently divided: and no objection being made to the report, the cause was submitted for a decree of sale and foreclosure, on the bill answer of the infants by their *guardian ad litem*, and the master's report.

It is therefore ordered, adjudged, and decreed, that the defendants pay into the hands of the register of this court, within sixty days from the date of this decree, the amount reported to be due: that is, the three first notes in the report aforesaid, with interests and costs thereon: and in default thereof, that then the master sell the premises described in the bill and mortgage, or so much thereof, as may be necessary to satisfy the amount which may be due at the time of said sale, interest and costs of suit.

And it is further ordered, that the property which may remain unsold, shall stand as security for the amount to become due; and in the event of a failure to pay the same within sixty days from the time that any of them may become due, that then the master shall sell again, so much as may be necessary to satisfy the amount which may be due; and so on, until the whole of the property is sold, or the debt paid. But if the said premises cannot be so divided as to sell a portion of the same, for a sufficient sum in cash, to satisfy the amount which may be due at the time of the sale, then the master shall sell that portion which cannot be divided to advantage entire, for so much cash as will pay the amount due at the time of sale, with the interest and costs, and the balance shall be made to fall due at the same time that the payments not yet due, shall become due: and this decree shall operate as a lien upon the premises so sold, to secure the payment of the said balances; and if either or any of the said sums shall not be paid within sixty days after they become due, then the same proceedings shall be had as in case of original default: this decree always operating as a lien, to secure the payment of the amount sold on credit.

It is further ordered and decreed, that if the said defendants pay the amounts which may be due previous to a sale, to be made as aforesaid, that then the proceedings under this decree, shall

be suspended, until some other of the amounts to fall due shall become due: and in the event of a default and failure to pay any of said sums, as they may become due, then the whole shall be made by the master aforesaid. It is also ordered and decreed, that the master conduct said sale in the same manner and on the same conditions, as sheriff's sales are conducted; that he give public notice of the time and place of sale, &c.

The term of the court, at which this decree was made, is thus stated in the record.

The chancellor failing to appear on the second Monday of November, 1839, the court was adjourned from day to day, until Wednesday, the 13th day of November, 1839; and the chancellor still not appearing, at four o'clock of that day, the court was, by the sheriff, regularly adjourned until the court in course.

On Tuesday, the 19th day of November, the court was opened by the chancellor. From this decree, the respondents prosecute this writ of error, and now assign for error—

1st. The decree is erroneous, having been rendered at the fall term, 1839, of the Mobile Chancery Court, when the cause had been regularly continued until the next term:

2d. The decree is erroneous, having been rendered in vacation:

3d. The decree is erroneous, because the chancellor had no power to render a decree:

4th. The court erred, in recognizing the supplemental bill, when the same was irregular, and not properly a part of the record, no leave to file the same, having been given:

5th. The court erred, in deciding upon the matter of the supplemental bill, when the same is uncertain, and does not sufficiently disclose, whether it be John B. Norris, who is charged as a defendant thereby, or the Branch of the Bank of the State of Alabama at Mobile, and not proper as a supplement, and there is no new process against the defendants, requiring them to answer the supplemental bill:

6th. The proceedings are erroneous, in respect to the defendants, Eliza Ann, Michael and Uriah Keenan, treating them

Walker *et als.* v. Hallett.

as minors, when it does not appear that they are such; and there is no proof of the fact:

7th. The court erred, in appointing M. J. McRae, *guardian ad litem*, for Eliza Ann, Michael and Uriah Keenan, in the manner and at the time, shewn in the record:

8th. The court erred, in appointing the said *guardian ad litem*, and at the same time, ordering publication as to two of them as non-residents; and also, process against Eliza Ann Keenan:

9th. The court erred, in appointing a *guardian ad litem* for *non-resident* infants:

10th. The court erred, in decreeing a foreclosure against the Bank, when such corporation was not lawfully brought in by process:

11th. The publication as against the absent defendants, was insufficient, and did not authorize the proceedings had thereupon:

12th. The order of reference is erroneous and improper. In referring to the master to take proof of the material facts charged in the bill: In directing report at the same time, without notice of taking evidence: In referring to McRae, who was guardian for the minors; such duties being incompatible, and without authority by the chancellor, to refer at that time:

13th. The court erred, in confirming the report of the master:

14th. The decree, *pro confesso*, was unauthorized and improper, uncertain whether against the Bank or against Norris:

15th. The court erred, in the final decree, directing succeeding sales, by the master, without any new order: In not ascertaining mode of sale, but decreeing in the alternative: directing payment to complainant before confirmation of sale, complicating the rights of the parties, &c. &c.:

16th. The decree is erroneous, because rendered without sufficient proof to sustain it.

STEWART & CAMPBELL, for the plaintiffs in error—cited Hoffman's Chan. Prac. 405: 2 Paige Chan. Rep. 333: 1 Paige Chan. 200: 3 Stew. Rep. 146: 3 Bibb 525: 7 Johns. Rep. 632:

Walker *et als.* v. *Hallett.*

3 Ohio Rep. 363: 3 Johns. Chan. 368: Hoff. Chan. P. 416:
Gressly Eq. Ev. 41: 3 Marsh. Rep. 179: Cooper's Equity 109:
11 Vesey Jr. 563.

GAYLE, contra—cited 2 Madd. Ch. 524: 6 Johns. Chan. 450: 4
ibid. 605: 1 Hoffman's Ch. Prac. 405: Cooper's Eq. 108 '9:
11 Vesey, Jr. 563: 8 ibid. 141: Hoffman's Chan. Practice
171 '2.— note.

ORMOND, J.—The three first assignments of error, are
well taken, as determined in the case of Cullum v. Casey & Co.
at the present term; and for that cause, the decree must be re-
versed, and the cause remanded for further proceedings; and for
the future government of the court, we think it proper to ex-
press an opinion on all the points presented by the assignments
of error.

The fourth, fifth and tenth assignments of error, which ques-
tion the regularity of the supplemental bill filed in the cause,
will be considered together. A supplemental bill, properly so
called, is a bill brought for any new matter which has arisen
since the filing of the original bill, and before it is brought to a
hearing; and in general, the defendants to the original bill should
be parties to it: (Jones v. Jones; 3 Atk. 216.) It is filed by
leave of the court; and it is objected in this case, that such leave
was not obtained: But as this permission is given as a matter of
course, in a proper case, on an *ex parte* application, it is doubt-
ful whether an objection would be entertained to it, for this cause.
It certainly would not at the hearing, if not objected to before:
and of course, not by a party in contempt, after a final decree:
See Eager v. Price, 2 Paige Chan. 333, where this objection
was not sustained.

For matter which existed at the time of filing the original bill,
and omitted from ignorance or mistake, leave will in general, be
given, on application to amend the bill; and such amendment
when made, forms a part of the original bill. Such, it is insis-
ted, is the predicament of this case; and doubtless, the object
might have been accomplished by amending the original bill:
but it appears from the case of McGown and others v. Yeates and

others, (6 Johns. Chan. 450) that the object may also be attained by a supplemental bill; and that in such a case, when the design was to bring prior incumbrances before the court, the original defendant need not be parties to it: Ensworth v. Lambert and others, 4 Johns. Chan. 605. The objection therefore, taken to the supplemental bill, for these reasons, cannot be sustained.

It is also insisted, that it is uncertain against whom the supplemental bill is filed: whether against John B. Norris, or the Branch Bank at Mobile.

As a corporation answers under their common seal, the complainant would be under peculiar disadvantages, if he could not compel an answer upon oath; and therefore, an exception is allowed in such cases, which is thus stated by Lord Redesdale: "There seems to be an exception in favor of a corporation, for as a corporation can answer no otherwise than under their common seal, and therefore, though they may answer falsely, there is no remedy against them for perjury. It has been usual, where a discovery of entries in the books of a corporation, or of an act done by the corporation, has been necessary to make their secretary, or book-keeper, or other officer, a party." See 1 Vernon 117: 3 Peere William 310: 1 Bro. C. Rep. 469. There would therefore, be no impropriety in calling on the President of the Bank, as its official organ, and acquainted with its concerns, to answer the bill, although the necessity for it in this case is not perceived.

The question here, is whether the Bank is a party. A party to a suit in chancery, is one, against whom process is prayed. The prayer of the bill is, that the Bank be made a party to the bill, *by serving a copy of the same on John B. Norris, the President thereof.* This, although not very formal, may be considered as sufficiently indicating the intention, to make the Bank a party. But the subpoena which issued, is not directed to the Bank, but to "John B. Norris, President of the Branch of the Bank of the State of Alabama at Mobile," to answer a bill of complaint, exhibited against *him* and others. It is most certain, that this was not process against the Bank; and

as no other was issued, there was no warrant for the decree *pro confesso* against the Bank, for want of an answer.

If the process had issued against the bank, service on the president would have been sufficient notice to the bank, to have justified a decree *pro confesso* for a failure to answer; or to have warranted the court in taking steps to compel an answer from the bank, if one had been desired.

The sixth, seventh, eighth, ninth, and eleventh assignments of error will be considered together:

A court of chancery, is peculiarly the guardian of all infants, brought before it, and will exert its utmost power to prevent any thing from being done to their prejudice; when the infant is of such an age as to be able to exercise his judgment, and have a choice, unless there be some sufficient reason for it, such as absence from the State, or great distance from the court, he should be present in court and consulted on so important a matter, as the choice of a guardian to conduct his suit. Our statute gives to minors over fourteen years, the right to choose their own guardian, and confers the power to appoint a guardian, on the judge of the county court, only in the event they fail to exercise this right; we do not say that in chancery, the infant's right of choice is absolute; but that his nomination should be approved, unless there be some good reason for rejecting it.

The English practice appears to be, to require the personal presence of the infant in court, or by his praying a commission, to have a guardian assigned him. (Cooper's Equity 108, 109, 2 Fonblanque 237.) So when the infant is a non-resident, a commission must go. (11 Vesey, Jr. 563.) But the practice does not seem to be certain, for in Thompson v. Jones, 8th Vesey, Jr. 141, service of process on the father-in-law, was held to be service on the infant.

We are of opinion that it is not absolutely necessary, that the infant should be brought personally before the court, to enable the court to appoint a *guardian ad litem*; such has not been our practice hitherto. In the case of non-residents it would be impossible; in the case of extreme infancy, useless; and in cases where the

infant is not in the vicinity of the court, though within the State, expensive and troublesome; and would frequently be a great hardship on the infant without any corresponding benefit. Nor do we think that in the case of non-resident infants, there is any necessity as is contended, to send a commission abroad. The only effect of such a course would be, to enable the infant to make a nomination, in cases where he was of sufficient age, and the guardian must at last be appointed by the court.

There is no proof in the record, that the heirs of Keenan are minors. It is certainly the most regular and, we think, the proper course, for the court to require proof of the fact, when the alledged minor is a non-resident.

It is the imperative duty of the court in all cases, to make the best selection in its power, of a proper person as *guardian, ad litem*, and especially when there is a real contest, as must always be the case when there is a sale prayed under a mortgage. The appointment of the same person master, and *guardian ad-litem*, was manifestly improper; the two offices were incompatible. It was the duty of the guardian to attend the master while taking the account, and make the report; to scrutinize his acts, and in all cases of doubt, to take an exception. It would be too much to expect the master to except to his own report; and admitting that he would always act according to his best judgment, there would be no security against unintentional error.

In the case of the heirs of Dunning v. Stanton, 9th Porter, 515, a doubt was expressed, whether an order of publication under our chancery practice was necessary when the *non* resident defendants are infants; but the point did not arise in judgment, and was not decided. We are now upon further reflection, satisfied that such a course is proper. The statute is general, requiring advertisements in case of non-residents, without exception; and although it is true that an infant cannot be said to be in default, yet the reason for requiring it in his case, is nearly the same as in that of an adult. Although not arrived at majority, he might be of sufficient discretion, to understand his inter-

ests; and if of tender years, such notice might reach his guardian, or relations, and enable them to take steps to defend the suit. We are therefore of opinion that it cannot be dispensed with.

It results from what has been previously stated, of the propriety of consulting an infant as to the choice of his guardian, that the court erred in appointing a guardian *ad litem*, before publication as to the *non resident* infants, and service of process on the one residing in the State.

We are, therefore, of opinion that it should appear that proof was made of the infancy of the alleged minor, if a non-resident; that it is not necessary in all cases, that the minor should be personally present, when a *guardian ad litem* is appointed; but that after the age of fourteen years, all resident minors should be consulted, as to the person to be appointed *guardian ad litem*, if not attended with too much trouble and expense, as to which the court will exercise a sound discretion; that it is proper that process should be served on all resident infants; which, when they are of tender years, may be executed on their guardians, or some of their near relations or friends; that publication is necessary and proper, in case of non-resident infants; and that after proof of such publication, a *guardian ad litem* may be appointed; that such appointment should not be made in any case, before service of process, or proof of publication; and that it is improper to appoint the same person master in chancery and *guardian ad litem*.

In reference to the appointment of *guardian ad litem* it is the duty of the court to select such persons if possible, *as are interested* in the welfare of the infant, and at all events of sufficient capacity to understand, and manage his affairs. We feel no hesitation in saying, that in cases like the present, the chancellor has power to make a reasonable compensation to the *guardian ad litem* for his trouble and expense, to be taxed as other costs in the suit, so as to insure, if possible, a faithful attention to the interests of the infant.

It is objected to the reference in this case to the master, that the chancellor referred to him the proof of the material facts stated in the bill; by which is understood, the proof of the execu-

tion of the bond and mortgage, as well as to state an account between the parties. It is to be observed, that the record shows that the original mortgage and notes were produced and proved to the court; after this, a reference to the master to take the same proof, could not vitiate. He was also required to report whether the premises were sufficient to pay the debt due on the mortgage, and whether it could be sold to most advantage entire, or in separate lots.

The master, after reporting the amount due on the mortgage, proceeds to say, "that it would be for the interest of the defendants to sell the premises in separate lots, if the premises can be conveniently divided."

This report does not answer the principal matter referred to the master, and is too meagre and destitute of facts, to be the foundation of a decree, especially where infants are concerned. Chancellor Kent, in the case of Mills v. Dennis, 3d Johns. Chan. 367, says: "The proper inquiry in such cases will be, whether a sale of the whole, or only of a part, and what part of the premises, will be most beneficial; and this has now become the usual inquiry, even where infants are not concerned, as appears from the case of Brinckerhoff v. Thalimer, 2 John. Ch. Rep. 486. The master must not only make a special report on that point, in every case where infants are defendants, but the plaintiff must also prove his debt, before the master, in the same manner as if nothing had been admitted by the answer; and the master must report such proof, and also the computed amount of the principal and interest due; and to what, and of which part of the premises, (if any part short of the whole) a sale would be sufficient to raise the debt; and at the same time be most beneficial to the infant." See also to the same effect, Ontario Bank v. Strong, 2d Paige, 301.

The master in the report made in this case, admits that it is for the interests of the defendants to sell the estate in separate lots, *if it can be conveniently divided;* but he leaves us in doubt whether this division can be made. He should have prosecuted his inquiries further, and ascertained whether such division could be made, and if so, which portion it was most for the

interest of the defendants to sell; the value of such parcel, and also the *proofs* on which this opinion rested.   This was particularly proper in this case, as the principal part of the debt was not due, when the decree was rendered, and consecutive sales were directed to be made, as the instalments fell due.   It might have been, and probably was, a matter of great moment to the defendants, which part of the estate if it could be divided, should be first sold; and especially that no more should be sold than was absolutely necessary.

The report of the master, therefore, for these reasons, should not have been confirmed; but the master should have been directed to report more fully and at length, upon the matter referred to him and such *a statement of the evidence,* as would enable the court to judge of the justness of his findings, if questioned by either party in conformity with the opinion here expressed.   See as to this point, the case of Johnston v. Richardson, 1 Molloy 54; 12th Con. Eng. Chan. 31.

The final decree is erroneous, in leaving it optional with the master, to sell a part or the whole of the property at his discretion.   As has been already stated, the fact whether it was for the interest of the defendants, that the estate should be divided should have been ascertained by the report of the master.   It is true, that there are cases in which a discretion must be confided to the master, in regard to the sale; and which if abused, can be remedied when the sale is reported for confirmation, if so directed by the decree.   But no farther discretion should be given, than is absolutely necessary and for the interest of the parties.

It is also objected, that the final decree is enormous, in not requiring the money raised by the sale to be paid into court.   In the case of Massena v. Bartlett, 8th Porter, 277, we sustained a decree similar in that respect, to the present.   It is true the effect will be, that the money may be paid over to the plaintiff.   But if there was any abuse of the power confided to the masters, or any unfair practice, which would make it proper that a re-sale should be ordered, notice of the intended application for that purpose, oculd be given, and the payment of the money arrested.

Walker *et als.* v. Hallett.

It is further objected that the decree is erroneous in directing successive sales of the property, as the instalments fall due, without applying to the court for an order to sell. It is very certain that a mortgage may be foreclosed and a sale directed, when the first instalment of a debt falls due, and if the premises could not be divided, and the whole was from necessity sold, as it would be improper to return the money to the mortgagor, it would perhaps be the proper course for the court to direct it to be paid over to the mortgagee in extinction of the mortgage; unless some course could be suggested, consistent with the safety of the mortgagee, and more beneficial to the mortgagor. But no decree should be rendered, for a debt not due, unless it were allowable in the case supposed, of the property mortgaged not being susceptible of division; which does not appear to be the case here. The decree should have been for the amount due, and the mortgaged property directed to stand as a security for the debt not due.

Thus, in the case of Levert v. Redwood, 9th Porter, 97, by the decree rendered by this court, the mortgaged property was decreed to be subject to the payment of the debt not due; and that if not paid when it became due, that the complainant might go before the master, and obtain a report of the sum due; and that thereupon the chancellor should order a sale of the residue of the mortgaged premises, or so much thereof, as shall be sufficient to satisfy the debt and interest thereon.

This is the correct decree in cases of that character, as is this case.

For the reasons given, the decree in this case must be reversed, and the case is remanded for further proceedings in conformity with the opinion here expressed.