## SOLOMON K. LALAKEA AND MOLLIE PANG LA-LAKEA *v.* LAUPAHOEHOE SUGAR COMPANY, ET AL.

### Nos. 2326 and 2327.

Argued September 12, 1939.          Decided December 15, 1939.

Coke, C. J., Peters, J., and Circuit Judge Le Baron in Place of Kemp, J., Disqualified.

266

This is a suit for partition. The legal title of particular shares or interests claimed in the property subject to suit was in controversy. The issues involving title were first heard and determined by the circuit judge in chambers, jury waived. From an interlocutory decree entered and filed on January 16, 1935, determining such issues an appeal was taken to this court. (See *Lalakea* v. *Laupahoehoe S. Co.*, 33 Haw. 745.) Upon remand the circuit judge ordered partition in kind of parts of the property and the sale of the remainder. Sale was made; the sale confirmed and a final decree entered accordingly on November 23, 1936.

The case is now pending before this court upon the joint appeal of petitioners Solomon K. Lalakea and Mollie Pang Lalakea and upon the joint appeal of the respondent Lily Hewahewa in her capacity as contingent remainderman expectant and of the respondent Thomas Kanamu Lalakea, a minor, by his next friend Lily Hewahewa from the final decree.

First as to the pending motions to dismiss appeals. The Laupahoehoe Sugar Company, a corporation, a respondent and cross-complainant, has filed motions to dismiss both appeals. Similar motions upon other grounds have also been before this court. (See 34 Haw. 232, 244, 729.) In the pending motions certain grounds are common

to both, *viz.,* (a) that the appellants failed to serve their respective notices of appeal upon appellees as required by R. L. H. 1935, § 3501; (b) that appellants failed to serve nonjoining parties who could be found within the Territory with a copy of their respective notices of appeal as required by R. L. H. 1935, § 3502; (c) that appellants in their notices of appeal failed to use the names of other persons against whom the decree appealed from was rendered as required by R. L. H. 1935, § 3502. The motion to dismiss, directed to the joint appeal of Lily Hewahewa and the minor Thomas Kanamu Lalakea, contains the additional ground that while purporting to be made by both appellants the same is signed only on behalf of Lily Hewahewa and not on behalf of the minor.

The grounds common to both motions will be considered first.

Those lettered (a) and (b) will be considered together. Upon the motion to dismiss the appeal of Lily Hewahewa in her capacity as a contingent remainderman expectant and Thomas Kanamu Lalakea, a minor, by his next friend Lily Hewahewa, the record of this court was supplemented after the motion to dismiss was filed by the affidavit of service of one of the attorneys for appellants. To this affidavit no traverse was filed. From the affidavit it appears that the affiant served the appeal and notice of appeal filed on behalf of the appellant Lily Hewahewa in her capacity as contingent remainderman expectant and on behalf of Thomas Kanamu Lalakea, a minor, by his next friend Lily Hewahewa, upon the attorneys for the Laupahoehoe Sugar Company and upon the attorney for the petitioners Solomon K. Lalakea and Mollie Pang Lalakea and upon Harry Irwin, Esq., who, prior to said appeal, had been acting as the guardian *ad litem* of the said Thomas Kanamu Lalakea, by depositing in the post office at Hilo an envelope, postage prepaid, duly and prop-

erly addressed to each of said attorneys, containing a certified copy of the appeal and notice of appeal of said appellants. Of the respondents named but three personally appeared in the circuit court, *viz.,* Laupahoehoe Sugar Company, a corporation, Thomas Kanamu Lalakea, a minor, by Harry Irwin, Esq., his guardian *ad litem,* and Lily Hewahewa. The remaining respondents, including Lily Hewahewa, were in default and orders of default and decrees *pro confesso* had been entered against them both upon the bill of complaint of the petitioners and upon the cross-complaint of the respondent and cross-complainant Laupahoehoe Sugar Company. Later, Lily Hewahewa was permitted by the court to intervene in the case. (See 34 Haw. 242.) Moreover, prior to the expiration of the return days fixed by the summons issued upon the bill of complaint of the petitioners and the cross-complaint of the respondent and cross-complainant Laupahoehoe Sugar Company, an order of class representation had been entered in the circuit court wherein and whereby the minor Thomas Kanamu Lalakea and his guardian *ad litem* Harry Irwin, Esq., were appointed to represent the heirs of the petitioner Solomon K. Lalakea and all other persons then living and those thereafter to be born who might then have or might thereafter acquire any contingent or other interest or estate in remainder upon the death of said Solomon K. Lalakea in the lands subject to a certain deed from T. K. Lalakea to the said Solomon K. Lalakea, dated March 6, 1915, in order to protect their rights, if any, and to bind them by such order and decree as the court might make therein. All of the known respondents, with the exception of the Laupahoehoe Sugar Company and the Hawaiian Insurance & Guaranty Company, Limited, including the said Lily Hewahewa, against whom defaults and decrees *pro confesso* had been entered, were heirs presumptive of Solomon K. Lalakea and remaindermen

expectant under the said deed from T. K. Lalakea to Solomon K. Lalakea, dated March 6, 1915, aforesaid. The record discloses that the only interest the respondent Hawaiian Insurance & Guaranty Company, Limited, had in the premises subject to suit was as mortgagee under a mortgage to it from the petitioner Solomon K. Lalakea and his wife and that the mortgage, so far as it affected the premises in suit prior to final decree, had been fully released.

Under the circumstances the only parties affected by the entry of the final decree from which the appeals were taken were the petitioners Solomon K. Lalakea and his wife Mollie Pang Lalakea, the respondent Laupahoehoe Sugar Company, the respondent-minor Thomas Kanamu Lalakea and the respondent Lily Hewahewa. The orders of default and decrees *pro confesso*, so far as their personal appearance was concerned, eliminated all of the respondents other than those named, both as appellees under the provisions of section 3501 or as "persons" against whom a decree "was rendered" or as "persons who have not joined in the appeal" within the meaning of the provisions of section 3502. By R. L. H. 1935, § 4755, it is provided that "all parties who shall not have appeared in the suit on or before the return day or within such further time as may be allowed by the court shall be deemed to be in default and as consenting to any partition or other disposition of the property as shall be decreed in accordance with the provisions of this chapter."

Upon the record it affirmatively appears that the appellants Lily Hewahewa, in her capacity as contingent remainderman expectant, and Thomas Kanamu Lalakea, a minor, by his next friend Lily Hewahewa, respondent, served the petitioners and the respondent Laupahoehoe Sugar Company with copies of their notice of appeal. So that if, under section 3501, they were required to serve a

copy of their notice of appeal upon all appellees and if, under section 3502, they were required to serve all of those parties to the suit against whom, similarly to themselves, the decree sought to be reviewed was rendered with a copy of their notice of appeal, they have complied with the statutes in each instance. The record fails to show, however, that the appellants Solomon K. Lalakea and Mollie Pang Lalakea served all appellees with a copy of their notice of appeal or served a copy of their notice of appeal upon all persons against whom, similarly to themselves, the decree sought to be reviewed was rendered, if they could be found within the Territory.

Whether, upon appeal to the supreme court from decrees of circuit judges in chambers, it is necessary to the jurisdiction of the supreme court under the provisions of section 3501 that the party appealing serve a copy of the notice of appeal filed by him upon the appellees and whether, in cases where the decree of the circuit judge in chambers sought to be reviewed by the supreme court was rendered against two or more persons and either or any of such persons appeal from such decree to the supreme court, the failure of the appellant or appellants to serve those of such persons who have not joined in the appeal and who could have been found within the Territory with a copy of the notice of appeal filed by the appellant, under the provisions of section 3502, is jurisdictional, was decided in the negative in the case of *Laupahoehoe S. Co.* v. *Lalakea*, 27 Haw. 682. And we see no reason now to divert from our decision in that case. It is intensely practical to adhere to precedent especially in procedural matters. Where a statute prescribing the procedural steps necessary to effect an appeal has been judicially construed, the construction adopted should be adhered to if possible. Since the *Laupahoehoe Sugar Company* case was decided, the territorial legislature has sat eight times in regular

biannual sessions and twice in special session. And to our knowledge no effort has been made legislatively to alter or change by statute the construction placed by this court on the provisions of sections 3501 and 3502. The petitioners-appellants in the instant case, advisedly or otherwise, prosecuted their appeal consistently with the method approved in the *Laupahoehoe Sugar Company* case. And they should not be penalized for doing what this court has expressly stated may be done under the statutes referred to.

Nor is there anything in the language employed in the case of *Lord* v. *Lord, ante,* p. 10, that affects the application of the rule of *stare decisis* in this case. In the *Lord* case the appeal was an interlocutory one from the order of the circuit judge in chambers overruling the demurrers of the demurring respondents save one, whose demurrer had been sustained. All of the unsuccessful demurrants filed a joint appeal and served copies of the notice of appeal upon the petitioners and upon each other. The procedural question involved in the *Lord* case arose from the failure of the appealing demurrants to serve copies of the notice of appeal filed by them upon defaulting and answering respondents. The abstract reference in the *Lord* case to the general rules applicable to appeals from circuit judges in chambers and the criticism of the decision in the *Laupahoehoe Sugar Company* case were *obiter dicta* and were intended by us solely as constructive criticism in the hope of future corrective legislation.

(c). The caption of the notice of appeal and appeal of Solomon K. Lalakea and Mollie Pang Lalakea contains the names of all of the parties to the cause, both petitioners and respondents. The caption of the appeal and notice of appeal of Lily Hewahewa in her capacity as a contingent remainderman expectant and Thomas Kanamu Lalakea, a minor, by his next friend, contains the names of the peti-

tioners but only the name of one respondent, *i.e.,* Laupahoehoe Sugar Company, a corporation. The other respondents are referred to by the abbreviation "et al." The abbreviation "et al." was legally ineffective as a "use" of the names of the unnamed respondents within the meaning of the statute but to the extent that the captions include the names of the parties, the respective appellants "used" their names respectively appearing therein within the meaning of section 3502. The obvious purpose of the provisions of section 3502 was to simplify appellate procedure when less than all of the persons against whom a decision, judgment, order or decree was rendered seek its review. As a substitute for summons and severance the statute permits either or any of such persons to appeal and for that purpose to "use" the names of all such persons. A decree may not follow party lines. Complainants and respondents may be similarly affected by a decree so that it may be said the decree was rendered against them. But it is equally obvious that the greater includes the less. And where, as here, the appellant uses the names of all of the parties complainant and respondent affected by the decree, the notice necessarily includes all of the persons against whom the decree sought to be reviewed was rendered within the meaning of the statute. Hence, the appellants in the joint appeal taken by Solomon K. Lalakea and his wife used the names of all persons against whom the decree sought to be reviewed was rendered. Similarly, in the joint appeal of Lily Hewahewa in her capacity as contingent remainderman expectant and of Thomas Kanamu Lalakea, a minor, by his next friend Lily Hewahewa. They used the names of the petitioners Solomon K. Lalakea and his wife and of the respondent Laupahoehoe Sugar Company, a corporation, the only other parties aside from themselves affected by the decree sought to be reviewed and necessarily included all persons

against whom the decree sought to be reviewed was rendered.

There remains to be considered the separate ground of dismissal urged against the joint appeal of the minor respondent and Lily Hewahewa, *i.e.,* that the notice of appeal was signed only on behalf of Lily Hewahewa and not on behalf of the minor.

The body of the notice of appeal involved recites as follows: "Comes now LILY HEWAHEWA in her capacity as a contingent remainderman expectant and THOMAS KANAMU LALAKEA, a minor, by his next friend, LILY HEWAHEWA, and give notice of appeal and do hereby appeal" etc. It is signed "LILY HEWAHEWA by—T. E. M. OSORIO and CASS & SILVER by (S) T. E. M. OSORIO." Both the minor, by Lily Hewahewa as his next friend, and Lily Hewahewa in her capacity as contingent remainderman expectant, had appeared in the circuit court. And they had been represented in that court by the attorneys whose names appear upon the notice of appeal. It will be assumed that they had authority to represent both appellants to the extent of executing a notice of appeal on their behalf.

While neither section 3501 nor section 3502 requires that a notice of appeal be signed by or on behalf of the appellant, it is reasonable to assume that in order to accomplish its purpose, a notice of appeal should indicate from whom it emanates in order that the appellee, under section 3501, or nonjoining parties, under section 3502, may be advised that the notice of appeal comes from a proper source. The signature of an appellant subscribed to the notice of appeal by or on his behalf is the usual and ordinary method of affording such notice. In our opinion the signature of Lily Hewahewa subscribed by her attorneys to the joint notice of appeal indicates from whom the notice of appeal emanates and that it comes

from a proper source. From the records of the trial court and from the body of the notice of appeal itself it appears that Lily Hewahewa not alone appealed personally in her capacity as a contingent remainderman expectant but also on behalf of the minor as his next friend. That there was not repeated in connection with her name subscribed to the joint notice of appeal the language embodied in the notice of appeal itself indicating on whose behalf the joint notice of appeal was given is, in our opinion, immaterial. "The intention * * * is so manifest that we believe this court should not decline to entertain the appeal on so technical a ground." *Noble* v. *Whitten*, 34 Wash. 507, 510, 76 Pac. 95. The motions to dismiss should therefore be denied.

Next as to the merits. It will be remembered that the former appeal was from the interlocutory decree of January 16, 1935. Upon remand of the case to the circuit judge the appearing parties were at issue under their pleadings upon the mode and manner of partition and the questions necessarily incidental thereto accordingly as it might be determined that the property be partitioned in kind or by sale for division in whole or in part.

The remand issued out of this court May 4, 1936. On May 29, 1936, at Honolulu, the appearing parties, including the minor respondent Thomas Kanamu Lalakea, hereinafter referred to as the minor, with the approval of the circuit judge, entered into and there was filed in the cause on June 1, following, a stipulation which, omitting the caption, is quoted in full in the margin.[1] This stipulation

---

[1] "IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES HERETO, BY THEIR RESPECTIVE COUNSEL, AS FOLLOWS: I. That nothing herein contained shall be considered or held to be a waiver by the parties hereto of a right of appeal from the interlocutory or final decree to be entered herein pursuant hereto, provided that no appeal shall be taken by any party hereto from the

in effect provided for the entry of a consent decree upon the remaining issues involved in the partition of the premises subject to suit without the taking of any evidence except upon the amount of compensation to be allowed the attorney who appeared as the guardian *ad litem* for the minor. It should be noted that the minor's name is subscribed to the stipulation by his guardian *ad litem* both in

matters stipulated to in Paragraphs numbered IV. and V. II. That under and pursuant to 'The Notice of Decision on Appeal' on file herein, further proceedings may be had herein before Hon. D. H. Case, acting Judge of the Circuit Court of the Fourth Circuit, at Honolulu, City and County of Honolulu, Territory of Hawaii, in the office of Wm. B. Lymer, Esq. in Honolulu aforesaid, on June 1st, 1936, beginning at ten o'clock A. M. of that day; all proceedings had in Honolulu pursuant to this stipulation shall be considered as and held to be proceedings had within the Circuit Court of the Fourth Judicial Circuit. III. That further proceedings to be had herein pursuant to this stipulation may be reported by such persons or person as may be appointed by said Judge to act as the acting clerk and/or the acting reporter here. IV. All parties agree that, except as hereinafter specifically provided, partition in kind of the land described in the petition and cross-bill on file herein, cannot be had without great prejudice to the parties interested, and that the Court may sell said property and divide the proceeds among the parties entitled thereto after paying all costs, fees and expenses that may be taxed and allowed by this Honorable Court. V. That as to the title of the Respondent, Laupahoehoe Sugar Company, to an undivided 1/2 interest in fee simple in Grant 2393 described in the pleadings herein, there shall be divided and allotted to said Laupahoehoe Sugar Company, as its share and interest in severalty in said Grant 2393, all of the land in Grant 2393 situate on the Hilo or Southeasterly side of a line drawn 600 feet from the Hamakua mauka or Southwesterly corner of the boundary of Grant 2393, said line to run parallel with the Hamakua or Northwesterly boundary of Grant 2393 down to the seashore; and that all of the remainder of the land described in the pleadings shall be sold at public auction by a commissioner to be appointed by this Honorable Court and subject to the approval of this Honorable Court, at an upset price of $74,285.40; said sale shall be made subject to a perpetual easement in fee simple 20 feet wide throughout, along the center line of the flume belonging to the said Laupahoehoe Sugar Company now on the property to be sold, and that said perpetual easement shall be vested in said

his individual capacity and as the representative of a class. The particular issues of title that had been determined involved solely the validity of a deed from T. K. Lalakea to his son Solomon K. Lalakea, the male petitioner, dated March 6, 1915, through whom the petitioner Solomon K. Lalakea and the respondent and cross-complainant Laupahoehoe Sugar Company claimed an undivided seven-eighths and an undivided one-eighth interest, respectively,

---

Laupahoehoe Sugar Company, in severalty, in addition to the piece of land in Grant 2393 allotted to said Laupahoehoe Sugar Company, said land shall also be sold subject to the lease made by Solomon K. Lalakea to said Laupahoehoe Sugar Company described in the proceedings, which lease has been extended up to the time when this litigation will be ended, and for sufficient time thereafter for said Laupahoehoe Sugar Company to mature and harvest the crops then growing upon the land to be sold, unless said Laupahoehoe Sugar Company shall become the purchaser of said property to be sold. VI. That the proceeds of sale of said property shall be apportioned by this Court for the purpose of a final decree to be entered in this Court by ascertaining the net proceeds of sale of said property after the payment of court costs and expenses of sale (but not including any attorney's fee allowed to the guardian ad Litem). And the value of the life estate of said Solomon K. Lalakea and Laupahoehoe Sugar Company in said net proceeds shall be computed and determined by the following calculation, namely: 5% of the said net proceeds shall be multiplied by 12.13275, of which value (subject to the provisions of Paragraphs numbered VII. and VIII. hereof) said Solomon K. Lalakea shall receive 7/8ths and said Laupahoehoe Sugar Company shall receive 1/8th, and the balance of said net proceeds, (subject likewise to the provisions of said Paragraphs numbered VII. and VIII.) shall be set aside as a fund for the heirs at law of the said Solomon K. Lalakea under the terms of a deed described in the pleadings from T. K. Lalakea to said Solomon K. Lalakea and on file as Exhibit 'A' in this case, to be invested and the income to be compounded for said heirs at law by a trustee to be appointed by this Court for that purpose. VII. That said judge shall then proceed to take evidence for the purpose of fixing and determining the amount of the fee to be allowed to the guardian *ad litem* for legal services performed for and rendered to the minor respondent herein and the class whom he was appointed to represent and to fix and determine the amount of said fee and apportion the payment of the same among the parties hereto and order the same paid out of the proceeds

in two of the lands and a part of the third subject to suit. If this deed was valid Solomon K. Lalakea was seized only of a life estate for his own life in the undivided interests claimed by him, remainder over to his heirs in fee. Similarly the estate of the Laupahoehoe Sugar Company in the interest claimed by it through the common source of title, T. K. Lalakea. The minor, as the son of Solomon, was a remainderman expectant under said deed. There

of the sale of said property as aforesaid; PROVIDED that if the guardian *ad litem* shall be awarded a fee in this suit in respect of all the other property comprised in the said deed (Exhibit 'A') from T. K. Lalakea to Solomon K. Lalakea, including the property described in the pleadings, then one-third (1/3) of such fee shall be paid by the life-tenants in proportion to their respective interests in their share of the net proceeds of sale of said property to be sold; and the remaindermen shall pay the remaining two-thirds (2/3) of said fee out of their share of said net proceeds of sale; but if the said fee shall be awarded by this Court only in respect of the property described in the pleadings, then the life-tenants shall pay one-half (1/2) thereof in proportion to their respective interests in said net proceeds of sale and the remaindermen shall pay the balance of said fee out of their share of said net proceeds. VIII. That said judge, if he shall deem that course necessary and/or advisable, shall appoint a special guardian *ad litem* for the minor for the special and sole purpose of representing the said minor and protecting his interest in the matter of fixing the said fee of Harry Irwin as such guardian *ad litem*; the fee of said special guardian *ad litem* shall be paid out of that portion of the proceeds of the said sale which shall be set apart for Thomas Kanamu Lalakea, a minor, and the class whom he was appointed to represent. IX. It is stipulated that the lands directly involved in this litigation, as to which there was any dispute as to the title thereof, are worth the sum of $74,285.40. DATED: At Honolulu, T. H., this 29th day of May, 1936. LAUPAHOEHOE SUGAR COMPANY, Respondent, By /s/ JOHN E. RUSSELL Its Vice President By SMITH, WILD, BEEBE & CADES, By /s/ H. EDMONDSON Its Attorneys. THOMAS KANAMU LALAKEA, a Minor, and the class whom he represents herein, By /s/ HARRY IRWIN HARRY IRWIN, His Guardian *ad litem*.

"The respondents Solomon K. Lalakea and Molly Pang Lalakea, petitioners herein, join in the above stipulation agreeing to all thereof SAVE AND EXCEPT the last sentence of Paragraph VI.; and as to said last sentence of said Paragraph VI. the said petitioners do not

were and could be others. So that as heretofore stated early in the proceedings, upon application made in that behalf, not alone was a guardian *ad litem* appointed for the minor respondent but the minor and his guardian *ad litem* were both appointed by the court to represent the class of which the minor was one.

On June 10, 1936, pursuant to the stipulation of May 29, preceding, an interlocutory decree in partition was entered by the court. Except for the findings of the title and interests of the respective parties it is based solely upon the terms of the stipulation. Except for the amount of the compensation allowed the guardian *ad litem* it has no evidence for its support. None was taken except upon the subject of the compensation to be allowed the guardian *ad litem*. Upon the issues of the mode and manner of partition and the questions necessarily incidental thereto it expressly adopts the terms and conditions of the stipulation of May 29, 1936, and decrees partition accordingly. In no instance does it digress in the slightest particular from the terms of the stipulation. The proceedings taken subsequently and up to final decree are predicated upon and in execution of the provisions of the interlocutory decree. Nor as far as the record discloses was any inquiry made by the court prior to its entry whether the terms of the interlocutory decree were for the interests of the minor.

---

admit that the interest of Solomon K. Lalakea is as therein set forth, but aver that his interest is a 7/8 interest in the fee simple title of said lands; but agree that the calculation of the present worth of the recited interests as made in said Paragraph VI., follows a correct formula, and LAUPAHOEHOE SUGAR COMPANY joins in this exception. SOLOMON K. LALAKEA and MOLLIE PANG LALAKEA, Petitioners, By /s/ SOLOMON K. LALAKEA Solomon K. Lalakea By /s/ WM. B. LYMER Wm. B. Lymer, Their Attorney. LAUPAHOEHOE SUGAR COMPANY, By /s/ JOHN E. RUSSELL Its Vice President. APPROVED: /s/ D. H. CASE D. H. Case, Acting Judge, Circuit Court of the Fourth Circuit, Territory of Hawaii."

The minor respondent as appellant has challenged the authority of the guardian *ad litem* to join in the stipulation and to consent to the entry of the interlocutory decree and in our opinion his objections are well-taken. That a guardian *ad litem* may in a proper case consent to the entry of an interlocutory decree and thereby waive proof of the allegations of the plaintiffs' petition was, upon the authority of *Thompson* v. *Maxwell Land Grant Co.,* 168 U. S. 451, 463, decided by this court in the affirmative in the case of *Lukua* v. *Manaia,* 21 Haw. 160, 163. In the *Thompson* case the court said: "Ordinarily indeed a court before entering a consent decree will inquire whether the terms of it are for the interest of the infants. It ought in all such cases to make the inquiry, and because it is its duty so to do it will be presumed, in the absence of any showing to the contrary, that it has performed its duty. In this case, while the decree fails to recite the making of such an inquiry, there is nothing to indicate that it was not made; the circumstances tend strongly to show that it was in fact made, and the finding is that the conclusion reached by the chancellor as to the advisability of the settlement was a sound exercise of his discretion." It will be observed from the language quoted that the presumption that the court before entering a consent decree inquired whether its terms were for the interests of the infant is a rebuttable presumption and does not obtain where there is "any showing to the contrary."

The real property for which partition was sought consists of three pieces of cane land situate in the district of Hamakua, Hawaii county, consisting of land "a," R. P. grant 2393, area, 96 acres, land "b," grant 2220, area, 81 acres and land "c," a portion of grant 2729, area, 128.887 acres. These lands will be hereinafter referred to by the alphabetical letter by which they are respectively identified. A flume owned and operated by the sugar company for

the transportation of cane crosses all three pieces of land. The Laupahoehoe Sugar Company owns an undivided one-half interest in fee simple in land "a" but its source of title thereto is not through the common source of title, T. K. Lalakea. Under the law of the case as laid down by this court upon the former appeal, the sugar company and the petitioner Solomon K. Lalakea as claimants through the common source, T. K. Lalakea, owned a life estate for the life of Solomon in the remaining undivided one-half of land "a" and in all of lands "b" and "c" in the proportion of one-eighth and seven-eighths interest, respectively, remainder over upon the death of Solomon to his heirs. The stipulation bears the file mark of 10:05 a.m., June 1, 1936. From the official transcript of the proceedings had in the cause on June 1, 1936 (the occasion of the taking of evidence upon the motion of the guardian *ad litem* for compensation), it would appear that the court by stipulation of the parties sat in Honolulu, instead of at Hilo, the seat of the fourth circuit court; that the stipulation of May 29, 1936, was handed to the judge only that morning and that almost immediately after taking the bench at 10:00 a.m., a lull having occurred in the proceedings, counsel for the sugar company called one of the terms of the stipulation to the attention of the judge "for the purpose of the record" and upon inquiry of the guardian *ad litem,* the judge informed counsel that he had already approved the stipulation. At the conclusion of the proceedings held in Honolulu on June 1, the case was continued for further proceedings to June 10, at Hilo. On June 10, the proceedings before the circuit judge were taken up almost exclusively with the amount of compensation that should be allowed the guardian *ad. litem* and upon the conclusion of that matter, the interlocutory decree was presented to the judge for signature and signed by him forthwith. It is dated June 10, 1936, and bears

the file mark of 11:25 a.m. of that day. Moreover, it is apparent that the interlocutory decree as to the same matters covered by the stipulation is based exclusively upon the terms of the latter. It recites the language of the stipulation to that effect and finds that the property cannot be partitioned in kind without great prejudice to the parties interested; that the property should be sold and the proceeds divided among the parties entitled thereto; and that the division and allotment as agreed should be made to the Laupahoehoe Sugar Company in lieu of its undivided one-half interest in fee simple in land "a" and orders the execution of a deed accordingly. It recites the terms of the stipulation in which it is agreed that all of the remaining land should be sold at public auction at the upset price named in the stipulation and so orders. It recites that the property to be sold should be subject to the perpetual right of way as agreed; that the perpetual right of way as stipulated should be vested in the Laupahoehoe Sugar Company in severalty in fee simple and directs a conveyance to it accordingly. It recites that it was agreed that the proceeds of sale should be divided "as therein and hereinafter provided" and orders the same divided in the same terms as is provided in paragraph VI of the stipulation.

The stipulation itself is not informative except as to the results attained by mutual agreement. The interlocutory decree is of a similar character. In the absence of evidence it is impossible to appraise the terms of the stipulation or of the interlocutory decree. Personal inquiry would necessarily require a broad field of investigation especially upon the question whether partition in kind would be impracticable in whole or in part or be clearly prejudicial to the parties interested. No less important was the question of the physical effect of allotting to the Laupahoehoe Sugar Company in severalty the

right of way occupied by its flume. Inquiry would necessarily entail an inspection of the conditions existing upon the ground. And the residence of the trial judge which is at Wailuku, County of Maui, militated against convenient personal inspection. He was substituting in the case for the judge of the fourth circuit.

It would not be unreasonable to infer from all of the surrounding facts and circumstances attendant upon the approval of the stipulation of May 29, 1936, and the entry of the decree of June 1, 1936, that the trial judge made no prior personal inquiry as to the effect of the stipulation and interlocutory decree upon the interests of the minor. While an infant may be bound by a consent decree in a suit to which he is a party, and in the absence of any showing to the contrary it will be presumed that the court entering the decree performed its duty and inquired whether its terms were for the interests of the infant, if it appears that the court failed to perform its duty and entered the consent decree conformable to and solely in reliance upon the stipulation, the decree should be vacated and set aside. Minors as wards of the court are entitled to its jealous regard and protection. Especially is this true where, as here, the minor appears both personally and as one of the representatives of a class to which he belongs, including persons yet unborn.

Despite the record, however, we are loath to say that the presumption that the trial judge, prior to the entry of the interlocutory decree, made inquiry of the effect of its terms upon the interests of the minor respondent, has been overcome by satisfactory evidence. It might be that he made personal inquiry of the effect of the terms of the stipulation between the time of its approval and the subsequent entry of the interlocutory decree. His learning and long years of experience support the presumption and negative the uncounseled entry of a decree which so pro-

foundly affected the interests of the minor respondent and the class that he represented.

The rule enunciated, however, in the *Thompson* case has its exceptions. One is that where the consent decree waives or surrenders substantial rights of the minor, the decree will not be binding because it would denote a surrender of the rights of the infant without investigation by the court. (See *Glover* v. *Bradley,* 233 Fed. 721.) A guardian *ad litem* himself has no power to bind an infant by consenting to surrender his rights. (*Kingsbury* v. *Buckner,* 134 U. S. 650.)

"Courts have always been exceedingly zealous in guarding the rights and interests of minors. They have usually permitted guardians and guardians ad litem to do such things as were clearly to the advantage of the ward, and when the advantage to the ward was not clear they have instituted inquiry, and have sometimes referred the question of advantage to a master, before giving heed to the agreement of such guardian. The agreement of the guardian ad litem in regard to mere formal matters, such as relate to the speeding of the cause, as, for instance, entering into a stipulation to transfer the case from one court to another court of like jurisdiction, has been sanctioned. Lemmon v. Herbert, 92 Va. 653, 24 S. E. 249. On the other hand, courts have refused to permit a guardian ad litem to make an agreement that the decision in one case shall determine that in another, although the cases involve precisely the same facts and the same parties, and substantially the same points of controversy, on the ground that a guardian ad litem had but one duty to perform, and that was to defend the suit. McClure v. Farthing, 51 Mo. 109. The courts have been practically unanimous in holding that a guardian ad litem can admit nothing against and waive nothing in favor of his ward, but that the adversary of such infant must prove his

whole case, whether it be in law or in equity; and it makes no difference if such admission or waiver is contained in and forms a part of the answer filed by such guardian. Collins v. Trotter, 81 Mo. 275; Mills v. Dennis, 3 Johns. Ch. (N. Y.) 367; Johnson v. McCabe, 42 Miss. 255; Litchfield v. Burwell, 5 How. Prac. (N. Y.) 341; Massie v. Donaldson, 8 Ohio 377; Shultz v. Sanders, 38 N. J. Eq. 156; Stinson v. Pickering, 70 Me. 273; Crain v. Parker, 1 Ind. 374; Tuttle v. Garrett, 16 Ill. 354; Holden v. Hearn, 1 Beavan 445; Claxton v. Claxton, 56 Mich. 557, 23 N. W. 310. The same doctrine has been held by the federal courts. In Kingsbury v. Buckner, 134 U. S. 650, 10 Sup. Ct. 638, 33 L. Ed. 1047, it was held that a next friend or guardian cannot, by admissions or stipulations, surrender the rights of the infant; and in White v. Joyce, 158 U. S. 128, 15 Sup. Ct. 788, 39 L. Ed. 921, the court held that where there are infant defendants, and it is necessary, in order to entitle the complainant to the relief he prays, that certain facts should be before the court, such facts, although they might be the subject of admission on the part of adults, must be proved against infants; and that is also the doctrine which has received the approval and sanction of this court in the case of Eaton v. Tillinghast, 4 R. I. 276." *Greene* v. *Mabey,* 85 Atl. 118, 120, 35 R. I. 11. "Neither the guardian nor the guardian's attorney can make any admissions to the prejudice of the ward. *McCloy & Trotter* v. *Arnett,* 47 Ark. 445. This is in accord with the general rule that a guardian *ad litem* has no power to join in an agreed statement of facts on which an action to which an infant is a party is to be submitted for decision. *Greene* v. *Mabey,* (R. I.) Ann. Cas. 1915-A, p. 1290, and note. In *Rankin* v. *Schofield,* 70 Ark. 83, the court held that, in the absence of authority given by statute, the guardian cannot agree to any compromise or family settlement by which the property interests of his

ward are affected, without the concurring sanction of the court to which he must look for authority to bind his ward. This is an application of the well known rule that a guardian has no power to bind the infant by any admission of fact. So it may be said to be the settled rule in this State and elsewhere that a next friend or guardian *ad litem* cannot by admission or stipulation surrender the rights of the infant. It is the duty of the court to protect the interests of the infants, and see to it that their rights are not bargained away by those who represent them. Of course this does not prevent them from assenting to such arrangements as are formal merely and which are only done to facilitate the decision of the case. But they cannot make an agreement as to the hearing which affects the substantial rights of the infant. Such a right has been defined as follows: 'A substantial right is something to which, upon proved or conceded facts, a party may lay claim as matter of law, which a court may not legally refuse, and to which it can be seen that the party is entitled within well-settled rules of law.' See *Howell v. Mills et al.*, 53 N. Y. 322." *Frazier v. Frazier*, 137 Ark. 57, 63, 207 S. W. 215.

The rule heretofore enunciated applies equally to a party appointed to represent a class.

By the interlocutory decree of June 1, 1936, the guardian *ad litem* waived and surrendered substantial rights of the minor. Further, both the minor and the guardian *ad litem* waived and surrendered substantial rights of the class they were appointed to represent. We refer to those provisions of the stipulation repeated in the interlocutory decree of partition of June 10, 1936, by which the guardian *ad litem* (1) agreed to the allotment of the flume right of way to the Laupahoehoe Sugar Company in fee without demanding proper adjustment or equalization thereof or as a condition of such allotment

requiring payment by the Laupahoehoe Sugar Company of the value of the right of way in excess of the value of its one-eighth undivided interest therein for the life of Solomon K. Lalakea; (2) agreed that sums in gross be paid out of the proceeds of sale as an equivalent for the respective interests of the life tenants; and (3) consented that the costs of court and that part of the compensation allowed the guardian *ad litem* himself, which were occasioned by the contest as to the particular interest of the minor in the property subject to suit, should be charged against the gross proceeds of sale and paid in part by the minor. We refrain from any comment upon the waiver by the guardian *ad litem* of the right of appeal from the provisions of paragraphs IV and V of the stipulation as unnecessary to our conclusion. We shall consider the acts of the guardian *ad litem* in the order named.

1. The guardian *ad litem* was not authorized to agree to the allotment of the flume right of way to the Laupahoehoe Sugar Company in fee without demanding proper adjustment or equalization thereof or as a condition of such allotment requiring payment by the Laupahoehoe Sugar Company of the value of the right of way in excess of the value of its one-eighth undivided interest therein for the life of Solomon K. Lalakea.

The only interests owned by the Laupahoehoe Sugar Company in the three pieces of property subject to suit were an undivided one-half interest in fee simple in land "a" and an undivided one-eighth interest for the life of Solomon K. Lalakea in the remaining one-half interest in land "a" and an undivided one-eighth interest for the life of Solomon K. Lalakea in lands "b" and "c." By the provisions of paragraph V of the stipulation of May 29, 1936, it was agreed that as to the title of respondent Laupahoehoe Sugar Company to an undivided one-half interest in fee simple in land "a" there be divided and allotted to

it as its share and interest in severalty in said land "a" all of that portion of land "a" that was situated on the Hilo or southeasterly side of a line drawn 600 feet from the Hamakua mauka or southwesterly corner of the boundary of land "a," said line to run parallel with the Hamakua or northwesterly boundary of land "a" down to the seashore. By paragraph VI of the said stipulation, it was further agreed between the parties that of the value of the life estate of Solomon K. Lalakea (computed according to the formula in said paragraph prescribed) in the net proceeds of sale the Laupahoehoe Sugar Company should receive one-eighth. Hence it is, that although the only interest of which the Laupahoehoe Sugar Company was seized in the flume right of way was an undivided one-eighth interest for the life of Solomon K. Lalakea, by paragraph V of the stipulation the sale of the remainder of the land described in the pleadings was made subject to a perpetual easement in fee simple twenty feet wide throughout, along the center line of the flume belonging to the said Laupahoehoe Sugar Company then on the property to be sold and said perpetual easement was vested in said Laupahoehoe Sugar Company in severalty, in addition to the piece of land in "a" theretofore allotted to the said Laupahoehoe Sugar Company under the provisions of the same paragraph of the stipulation. To the extent that an estate in fee in severalty in the whole of the flume right of way exceeds an estate for the life of Solomon K. Lalakea in an undivided one-eighth interest in the flume right of way, the allotment was not made by way of partition but, as far as the stipulation and interlocutory decree in partition disclose, was an out-and-out gift to the Laupahoehoe Sugar Company. The Laupahoehoe Sugar Company justifies the allotment under the rules enunciated in *Haw. C. & S. Co.* v. *Waikapu S. Co.*, 9 Haw. 417, preserved in substance in R. L. H. 1935, § 4746.

The law pertinent to statutory partition is to be found in R. L. H. 1935, c. 137, §§ 4740 to 4756, both inclusive. The pertinent portion of the section referred to is quoted in the margin.[2]

But it nowhere appears in the stipulation, interlocutory decree or otherwise, that any adjustment or equalization was agreed upon or made to offset the difference in value between an estate for life in an undivided one-eighth interest in the right of way and the value of an estate in fee of the whole either by a sale of other portions of the premises subject to suit or the payment by the Laupahoehoe Sugar Company of such value of the fee in the whole as was in excess of the value of the life estate in the undivided part. The conclusion is unescapable that the allotment of the flume right of way was not made by way of partition in kind or pursuant to the provisions of section 4746.

Sufficient does appear, however, to admit of the conclusion that the consideration of the allotment of the flume right of way was hidden in the upset price agreed upon by the parties at which the property remaining after the allotments to the Laupahoehoe Sugar Company, *i.e.,* the allotment of the northwesterly portion of land "a" and the allotment of the flume right of way, might be sold.

---

2 "The court shall have power * * * to cause the property to be equitably divided between the parties according to their respective proportionate interests therein, as the parties shall agree, or by the drawing of lots; to set apart any particular portion or portions of land to any particular party or parties who by prior occupation or improvement or otherwise may be equitably entitled thereto, and make any proper adjustment or equalization thereof by the sale of other portions and the application of the proceeds for such purpose, or as a condition of any such particular allotment to require payment by such parties of any value of the portion so set apart to them in excess of their proportionate interest in the value of the whole property; *to divide and allot portions of the premises to some or all of the parties and order a sale of the remainder.*"

The upset price agreed upon was admittedly in excess of the market value of the remaining property to be sold and to which it applied. The strategic position of the right of way permitting its use upon a sale at public auction of the property, including the right of way, as a weapon of extortion; its occupation by a flume constructed by and at the expense of the Laupahoehoe Sugar Company; the use by the plantation of the flume for the transportation of cane; all of these factors conspired to make the flume right of way of special and peculiar value to the Laupahoehoe Sugar Company. And were the right of way allotted to the Laupahoehoe Sugar Company in advance, under the guise of partial partition in kind, and the minimum price at which the remaining property might be sold at public auction sufficiently high to include either in whole or in part the special and peculiar value attached to the right of way, the Laupahoehoe Sugar Company, the only possible purchaser at the upset price fixed, would in effect pay for the right of way theretofore allotted to it. And that, in effect, was what was done. The scheme admitted of only one purchaser, the Laupahoehoe Sugar Company. The Laupahoehoe Sugar Company became the purchaser at the upset price. The explanations of the Laupahoehoe Sugar Company contained in its answering brief and quoted in the margin[3] confirm our conclusion.

---

[3] "This evidence shows the entire property, including the one-half interest of the plantation in Grant 2393 [land "a"], as well as the flume right-of-way, was appraised at $59,734.75. * * * It is apparent that the plantation was willing to offer the upset price of $74,285.40 at public auction of the property. This figure is about $20,000 more than the entire property, including the right-of-way, was appraised. The condition for this offer, agreed upon by all, was that the right-of-way for the flume should be reserved to the plantation, as it was of peculiar value to the plantation. This value was of the plantation's own making, and at its own expense; and the flume right-of-way was of value to

While under and pursuant to the provisions of section 4746 the court may set apart a particular portion or portions of land to any particular party or parties who, by prior occupation or improvement or otherwise, may be equitably entitled thereto and make any proper adjustment or

others only if they could 'hold up' the plantation, so to speak. The stipulation prohibited any appeal from the order of sale and from the provision setting off the flume right-of-way as part of the plantation's share of the common property, because that was the only condition upon which the plantation would bid $74,285.40. * * * Mr. Elmore * * * appraised the property at $59,743.76. This appraisement includes the interest of the plantation in Grant 2393, which it owns in fee simple, and includes the flume right-of-way. * * * This appraisement of all of the land, without excluding any flume right-of-way, is approximately $15,000 below the upset price reserving the flume right-of-way. * * * The Commissioner valued the land at $225 per acre below the flume, and in some cases, as high as $275 per acre above the flume, and this appraisement did not take into account any reservation for a flume right-of-way. If we deduct 10% for waste and pali from the 48 acres in Grant 2393 owned by the plantation, it leaves 43.2 acres, and applying the same rate of value as the upset price of $327 an acre to this 43.2 acres gives a value of $14,126.40, which added to the upset price of $74,285, omitting cents, gives a total value of all of the land, omitting waste and pali, of $88,411 against the appraised value of $59,734.76, or $29,000 in excess of the appraised value. * * * The right-of-way has a particular value only to the plantation, because of its business. The fact that it could be used as a weapon in the hands of others to force the plantation to pay a large sum of money in preference to finding another means of transportation is not market value that a court of equity will give any importance to. * * * Appellant is complaining of the stipulation whereby the plantation agreed to pay this excessive price for the property in exchange for settling once and for all the title to the flume right-of-way. * * * Unless there is some special reason, and none appears here, the Court will not deprive the plantation of its right-of-way, the value of which is entirely the plantation's making, and award it to the remaindermen to use as a club over the plantation to make it pay an unconscionable price for the land it crosses. * * * Contrary to the authorities above cited which hold that a cotenant making the improvement is entitled to the fair value thereof, the Lalakeas, including the remaindermen, were in fact awarded the value of the improvement in fixing the upset price so high."

equalization thereof by the sale of other portions of the land and the application of the proceeds for such purpose or, as a condition of any such particular allotment, require payment by such parties of any value of the portions so set apart to them in excess of their proportionate interests in the value of the whole property, the statute does not contemplate that such adjustment or equalization be undertaken by the parties between themselves and by stipulation even though approved by the court and adopted and incorporated in the decretal order of sale, agree upon the minimum price at which the property may be sold and include in minimum price so agreed upon in advance the value in whole or in part of the portions so set apart to them in excess of their proportionate interests in the value of the whole property.

2. Nor in the absence of agreement by the parties interested in the fund was the guardian *ad litem* authorized to agree that sums in gross be paid out of the proceeds of sale as an equivalent for the respective interests of the life tenants. At this juncture and to the better understanding of the scope of the statutory action of partition it would not be inappropriate to discuss the contention of the minor appellant that in partition the court is without jurisdiction of the interests of remaindermen, whether vested or contingent, and may only partition as between cotenants in possession, either actual or constructive. From an analysis of the statutes involved, we are convinced that the circuit judge at chambers has jurisdiction to partition property either in kind or sale for division where the property sought to be partitioned or undivided interests therein are subject to life estates in possession. Under the provisions of section 4740, when two or more persons hold or are in possession of real property as joint tenants or as tenants in common in which one or more of them has an estate in fee or a life estate in possession,

a suit in equity may be brought by any one or more of them for a partition of the property, according to the respective rights of the parties interested therein, and for a sale of the same or a part thereof as it shall appear that a partition cannot be made without great prejudice to the owner. It should be noted that the section uses the words "real property" as the subject of suit. And these words, when considered in connection with the provisions of section 4741 in respect to necessary parties, intervenors and unknown owners, the provisions of section 4742 in respect to the necessary allegations of title and rights of all parties interested and the provisions of section 4744 in respect to summons and personal and substituted service, characterize the action as purely one in *rem*. When the jurisdiction of the court is invoked by those permitted so to do under the provisions of section 4740, the court may exercise its jurisdiction irrespective of limitations upon the fee. This is emphasized by the further provisions of section 4740 that the "circuit judges in the several circuit courts, sitting at chambers in equity * * * shall have power, in any suit for partition, to proceed according to the usual practice of courts of equity in cases of partition, and according to the provisions of this chapter in enlargement thereof," by the provisions of section 4742, making it obligatory to join as parties respondent all remaindermen, vested or contingent, and the provisions of section 4751 quoted in the margin.[4]

---

[4] "Sec. 4751. Estates for life and years, and contingent estates. If an estate for life or years shall be found to exist as to any part of the property, or if any estate in dower or by curtesy shall exist with respect thereto, such estate shall after partition relate only to the share set apart in partition and corresponding in severalty to the undivided interest theretofore subject thereto; and likewise as to any estate or interest dependent upon any contingency or executory provision. If the property be sold, the proceeds of sale of the share or interest theretofore subject thereto shall be subject to the same estate in lieu of the property

The language of section 4751 is clear and unambiguous. Under its provisions the estate in remainder, whether vested or contingent, follows the *res* or the fund accordingly as the property is partitioned in kind or sold for division. Obviously, section 4751 never would have been enacted if the legislature had intended that where estates for life were found to exist as to parts of the property, partition for which was sought, only the tenants of the particular estates could have partition. On the contrary, this section, when read in the light of the other sections to which we have referred, indicates a legislative intention to permit compulsory partition at the instance of cotenants for life in possession, actual or constructive, and to confer upon the circuit judges, when their jurisdiction is invoked by the proper parties, as permitted by section 4740, the power and authority to completely adjust the interests of the owners of the particular estates and remaindermen as between themselves.

Holding, as we do, that the circuit judge had jurisdiction to partition the property subject to suit by partition in kind or sale for division in whole or in part and to adjust the rights of the life tenants and the remaindermen expectant, we may return to the consideration of the particular matter at hand, *i.e.*, whether a guardian *ad litem*

---

sold. If the parties interested in any fund subject to any estate for life or years or any estate in dower or by curtesy shall not agree upon a sum in gross to be paid and accepted as the equivalent thereof, the court shall direct such fund to be invested and the income thereof paid and the corpus eventually transferred to the parties entitled thereto, as they shall respectively be or become entitled. If any such fund shall represent the proceeds of sale of any share theretofore subject to any contingent estate or right therein or to any executory provision, or inchoate right of dower, the fund so involved shall be held by the court or suitably placed in trust and invested upon the same terms and conditions as to the vesting or enjoyment thereof as before existed with respect to the share or interest sold."

is authorized to agree to surrender to the life tenants sums in gross as equivalents of their respective interests as such in the proceeds of a sale in partition in the absence of an agreement thereto of all parties interested in the fund. The interlocutory decree of June 10, 1936, as heretofore pointed out, decreed in terms what had already been agreed by paragraph V of the stipulation and by the final decree there is ordered paid to the petitioner Solomon K. Lalakea and the Laupahoehoe Sugar Company in gross, as representing the values of their proportionate life interests in the net proceeds of sale, the sums of $33,551.22 and $4793.03, respectively. These amounts are the results of a correct computation according to the formula agreed upon by paragraph V of the stipulation and confirmed by the interlocutory decree and are based upon net proceeds of sale in the sum of $63,207.66. Reverting again to the provisions of section 4751, it will be seen that it is therein expressly provided that "if the parties interested in any fund subject to any estate for life * * * shall not *agree* upon a sum in gross to be paid and accepted as the equivalent thereof, the court shall direct such fund to be invested," etc. (Italics provided.) In our opinion no such agreement existed. An existing agreement between the parties interested in the fund is a condition precedent to the payment to life tenants of any sum in gross. And in the absence of an agreement to that effect by all of the parties interested the guardian *ad litem* was not authorized to agree to distribution to the life tenants. A guardian *ad litem* is not authorized to contract on behalf of his ward. Nor were either the minor or the guardian *ad litem* authorized to contract on behalf of the class they represented. All of the known respondents (excepting the corporate respondents) in addition to the minor were heirs presumptive of Solomon K. Lalakea. As such they were contingent remaindermen under the

deed of March 6, 1915. They did not sign the stipulation. Neither the minor nor the guardian *ad litem,* both of whom were appointed to represent the contingent remaindermen expectant as a class, was authorized by virtue of his appointment to agree to the distribution of the proceeds of sale on behalf of these respondents. As far as the record discloses the individual respondents other than the minor were *sui juris.* Moreover, on May 29, 1936, and when the stipulation was signed, the class represented by the minor and the guardian *ad litem* included remaindermen expectant not in being. Where, as here, it appears that the parties interested in a fund representing the net proceeds of sale in partition which is subject to estates for life have not agreed upon the sums in gross to be paid and accepted by the life tenants as the equivalents of their respective interests therein, there is no alternative under the statute but for the court to preserve the fund intact and direct that the same be invested and the income thereof paid and the corpus eventually transferred to the persons entitled thereto as they shall respectively be or become entitled.

3. The guardian *ad litem* was not authorized to agree to the provisions of paragraphs VI or VII of the stipulation subsequently adopted in the interlocutory and final decrees and thereby consent that that part of the costs of court and that part of the compensation allowed the guardian *ad litem,* which were occasioned by the contest as to the particular interests in the property subject to suit, should be apportioned among the parties, including the minor. The issues of title were raised by the amended petition of petitioners, the answer and cross-bill of the Laupahoehoe Sugar Company and the amended answer of the minor. They were the only parties before the court. It was not until after the entry of the interlocutory decree of partition that the respondent Lily Hewahewa,

though in default and though a decree *pro confesso* had been entered against her, intervened by permission of the court. The petitioner Solomon K. Lalakea and the respondent and cross-complainant Laupahoehoe Sugar Company, under their respective pleadings, took the position that the respective interests which they claimed through the common source of title, T. K. Lalakea, were in fee. The minor, on the other hand, claimed that these same interests were mere life estates for the life of his father, Solomon K. Lalakea, remainder over upon the death of the latter to his heirs. The issues depended for their determination upon the validity of the deed of T. K. Lalakea to Solomon K. Lalakea, dated March 6, 1915. It was the issue of title that first engrossed the trial court and upon which the interlocutory appeal was prosecuted to this court. Costs accrued in the circuit court upon the trial of this issue. The compensation allowable to the guardian *ad litem* for the services rendered by him on behalf of the minor included in part the services rendered by him upon the trial of this issue in the circuit court and upon the appeal of the guardian *ad litem* to this court from the interlocutory decree determining title. The final decree in express terms charges against the gross proceeds of sale all of the costs of the circuit court, which necessarily included the costs accrued upon the trial of the issue of the validity of the deed of March 6, 1915, and the amount of the compensation finally allowed the guardian *ad litem,* which also necessarily included in part the compensation of the guardian *ad litem* for his services rendered in this court on appeal from the interlocutory decree determining title.

Section 4756 provides: "All costs of the proceedings in partition shall be paid by the petitioner in the first instance, but eventually by all of the parties in proportion to their interests, except such costs which may be occa-

sioned by contests as to particular shares or interests, which shall be charged against the particular shares or interests involved and be paid as determined by the result of the trial of such particular issue." By section 4744, authority is expressly conferred upon the circuit judge at chambers to appoint a guardian *ad litem* to represent a party under legal age. Moreover, it is his duty to do so. Neither section 4744 nor section 4857, the latter of which is applicable generally to the appointment of guardians *ad litem,* makes provision for their compensation. But, in our opinion, the power to appoint a guardian *ad litem* in suits in equity for partition necessarily implies the additional power to compensate the guardian *ad litem* for the services rendered by him on behalf of the minor.

Moreover, the word "costs" as employed in section 4756 necessarily includes compensation allowable to a guardian *ad litem* for the services rendered by him on behalf of his ward in the cause in which he is appointed. It is true that section 3791, containing the schedule of costs applicable to circuit judges in chambers, is silent upon the subject of compensation of guardians *ad litem*. But in view of the nature of the action and the absence of provision for the compensation of officers of the court upon whom the circuit judge in the performance of his duties must of necessity rely, the term "costs" must be considered as used in the statute in its broad, comprehensive sense and to include not alone the statutory costs included in section 3791 *eo nomine* but also all costs incidentally incurred in the execution by the circuit judge of the duties imposed upon him by the law pertaining to statutory partition.

Similar situations have been similarly disposed of in other jurisdictions. In *Brown* v. *Furlong,* 166 La. 537, 117 So. 583, 586, the court said: "However, in other instances, such as in partition suits, while the law expressly authorizes the appointment of curators ad hoc to

represent absent defendants, yet so far as we are able to ascertain, in all of them, with possibly one or two isolated exceptions, it makes no express provision for the taxing of such fees as costs. On the other hand, it has been the general practice to tax them as costs, upon fixing them, after an opportunity to be heard is given, and the right to so tax them seems to be recognized by jurisprudence. State ex rel. Louisiana Board of Trustees v. Judge, 30 La. Ann. 1026. We think that where the authority to tax such fees as costs is not expressly given, it is implied in the power to appoint curators ad hoc. Our conclusion is that the law authorizes the taxing of the fee of a curator ad hoc, in a partition suit, as costs." In *Walker* v. *Hallett,* 1 Ala. 379, 390, the court said: "We feel no hesitation in saying, that in cases like the present, the chancellor has power to make a reasonable compensation to the *guardian ad litem* for his trouble and expense, to be taxed as other costs in the suit, so as to insure, if possible, a faithful attention to the interests of the infant."

Holding, as we do, that the word "costs" as employed in section 4756 includes the reasonable compensation allowed a guardian *ad litem,* there remains to be considered the question by whom the same must be paid. Ordinarily, in partition cases costs are apportioned between the parties according to their respective interests. This is the general rule in actions for partition irrespective of statute. The idea is that all parties to the suit are presumed to be proportionately benefited by all of the steps in which costs are incurred. And section 4756, by the use of the language "all costs * * * shall be paid * * * by all of the parties in proportion to their interests," adopts that policy. Where controversial matters arise, however, it would be inequitable to tax costs accrued in respect of the trial thereof against parties neither interested in nor affected thereby. The same section anticipates such a situation and provides

that where costs are occasioned by contests as to particular shares or interests, all costs which may be occasioned in respect to such contests be charged against the particular shares or interests involved and be paid as determined by the result of the trial of such particular issue.

Under the provisions of the statute quoted and the holding of this court in *Pioneer Mill Co.* v. *Ward,* 34 Haw. 686, the costs occasioned by the contest as to the estates claimed by the petitioner Solomon K. Lalakea and Laupahoehoe Sugar Company should abide the result of the determination of that phase of the case. The issues were determined by this court in favor of the minor and against the petitioners and the respondent and cross-complainant Laupahoehoe Sugar Company. The court costs accrued upon the hearing of the issues of title in the circuit court should have been taxed against the petitioners and the respondent and cross-complainant Laupahoehoe Sugar Company in the proportion of the respective interests owned by them and involved in the controversy. Similarly as to that part of compensation allowed the guardian *ad litem* which was earned by him in contesting the claims of the petitioner Solomon K. Lalakea and the respondent and cross-complainant Laupahoehoe Sugar Company in the circuit court and in this court on appeal.

Complaint is made by all of the appellants, the petitioners, the minor respondent and the respondent Lily Hewahewa against the amount of compensation finally allowed the guardian *ad litem* upon the ground that the same is excessive. The circuit judge, upon the conclusion of the trial before him of the issues of title, allowed the guardian *ad litem* the sum of $2000 and, upon the entry of the final decree, the further and additional sum of $10,000. There is nothing in the record to disclose upon what the trial judge based his initial allowance of $2000 or to what services rendered or to be rendered by the

guardian *ad litem* the same was referable. But it is reasonable to assume that the allowance was made by him by way of compensation for the services rendered by the guardian *ad litem* on behalf of the minor in the circuit court from the time of his appointment to and including the entry of the interlocutory decree on the issues of title. This initial allowance has been paid to the guardian *ad litem* by the respondent and cross-complainant Laupahoehoe Sugar Company and apparently was accepted by the guardian *ad litem* as payment for the services rendered by him on behalf of the minor from the time of his appointment to date of allowance. The amount of this allowance was not referred to in the final decree of partition nor was it charged against the gross proceeds of sale. Nor have any of the appellants objected to the reasonableness of the amount thereof. It has not been made a subject of review by this court. Under the circumstances there are cogent reasons for concluding that the initial allowance of $2000 was made by the circuit judge and the payment thereof accepted by the guardian *ad litem* in full payment and satisfaction for all services rendered by the guardian *ad litem,* on behalf of his ward in the circuit court, from the time of his appointment to and including the entry of the interlocutory decree of January 16, 1935, and that upon final decree the only services rendered by the guardian *ad litem,* for which he was entitled to compensation, were those subsequent to the entry of the interlocutory decree of January 16, 1935, and up to final decree in partition.

Testimony was taken before the trial judge upon the application of the guardian *ad litem* for a final allowance of compensation for services rendered. Evidence was adduced by the guardian *ad litem* upon the value of the extraordinary services rendered by him in his capacity as an attorney at law. Attorneys were called as experts.

The guardian *ad litem* as a witness on his own behalf testified to the services rendered by him and their value; also that he had incurred expenses on behalf of the minor. He failed, however, to give the details of the latter. The evidence adduced upon the question of the value of professional services rendered by the guardian *ad litem* is of little value due to the false hypotheses upon which the same was predicated. The opinions of the expert witnesses, including that of the guardian *ad litem,* were admittedly influenced by the effect of the opinion of this court, reported in 33 Haw. 745, upon the interests of the minor under the deed of March 6, 1915, as heir-at-law presumptive of the grantee Solomon K. Lalakea and as remainderman expectant in the interests in lands subject to said deed; by the market value of the interests in lands conveyed by said deed; by the market value of the land involved in the instant suit and in which the remaindermen expectant were interested and by the element of contingency upon the assumption that the compensation of the guardian *ad litem* was contingent upon success. Ordinarily in determining the reasonable value of professional services rendered by an attorney, it is competent to take into consideration the effect of the results obtained. This would be so in a suit for partition when, as between attorney and client, the value of the services rendered by the latter came into question.

"In determining the question of a reasonable fee for a guardian ad litem, there should be considered the difficulties and importance of the case, the amount of work performed, the amount involved in the litigation, the benefits to the ward from the results of the litigation, etc." *Texas Employers' Ins. Ass'n* v. *Storey,* 7 S. W. (2d) 913, 915 (Tex. Civ. App.). But where, as here, compensation of the guardian *ad litem* for services rendered by him, including extraordinary services performed in his capacity

as an attorney at law, is chargeable as costs and taxable as such against all of the parties in proportion to their interests, except where the same may be occasioned by contests as to particular shares or interest when the same are charged against the particular shares or interest involved and paid as determined by the result of the trial of such particular issue, the compensation of the guardian *ad litem* for services rendered in respect to such particular issue must be confined to the services rendered by him in the particular case uninfluenced by the effect of the results obtained upon the property of the minor not involved in the partition proceedings. It unquestionably would be inequitable to charge against the petitioners and the Laupahoehoe Sugar Company compensation allowed the guardian *ad litem*, the amount of which was influenced by the effect of the results attained upon the rights of the minor under the deed of March 6, 1915. This being so, the market value of the interests in lands subject to the deed of March 6, 1915, was wholly immaterial.

Nor was the market value of the land involved in the instant suit and in which the minor was interested as a contingent remainderman expectant material to the question of value of professional services rendered. The contingent remaindermen, including the minor, neither individually nor as a class, had any present right of possession or enjoyment of the land involved in the instant suit and in which they were interested as contingent remaindermen expectant or of the proceeds of the sale of said interests in whole or in part. The only evidence of value competent and material to the issue was evidence of the present value of the future interest that might vest or come into the possession of the remaindermen expectant as a class, including the minor, upon the death of Solomon K. Lalakea and the termination of the particular estates dependent upon his life.

Finally the compensation of the guardian *ad litem,* at least as to the amount thereof that was by way of compensation for professional services rendered, was not contingent upon success. Had the minor been unsuccessful in sustaining the validity of the deed of March 6, 1915, the guardian *ad litem* would nevertheless have been entitled to compensation for the professional services rendered by him as an attorney at law. Section 4756, in addition to the portion heretofore quoted, further provides: "In addition to costs of the proceeding the judge may allow any fee or fees for legal services rendered by the attorneys for any of the parties, and apportion the same for costs for payment by and between the parties or any of them, all as to the judge shall seem equitable in the light of the services performed and the benefits derived therefrom by the parties, respectively." Both the petitioners and the respondent and cross-complainant Laupahoehoe Sugar Company in their bills, as amended, prayed for the appointment of a guardian *ad litem* and for class representation. Both the petitioners and the respondent and cross-complainant Laupahoehoe Sugar Company contended against the validity of the deed of March 6, 1915. The minor was a necessary party. It was incumbent upon the court under the statute to appoint a guardian *ad litem* to represent his interests. The guardian *ad litem* in good faith defended the validity of the deed of March 6, 1915. The professional services rendered by him in that regard were beneficial to the adverse parties. Without the appointment of the guardian *ad litem* it would have been impossible for the court to determine the issues before it. Ample provision is made by section 4756 to meet this situation. A guardian *ad litem* who, in his capacity of attorney at law, performs legal services for his ward is, within the terms of the statute, an "attorney" for a "party." And where, as here, legal services performed

by the guardian *ad litem* are for the benefit of the adverse parties, the court may apportion an attorney's fee allowed him for costs for payment by them when to the judge it shall appear equitable in the light of the services performed and the benefits derived by them. A similar situation arose in New York where, under the statute and rules of court, it was provided that "if a guardian ad litem * * * shall have been appointed for an infant defendant who is not entitled to any money or property under the terms of the final judgment, such guardian may, nevertheless, receive such compensation as the court shall deem reasonable, which shall be paid by any party to the action or proceeding or out of the proceeds of any property which is the subject matter of the action, as the court shall direct." N. Y. Civ. Prac. Act § 207, Rules of Civ. Prac., rule 43. In *Livingston* v. *Ward,* 248 N. Y. 193, 196, an infant defendant for whom a guardian *ad litem* had been appointed was not entitled to any money or property under the terms of the final judgment. The guardian *ad litem* made application for an allowance of compensation for services rendered. The court held: "The court could not determine the questions before it without the presence of the infant defendants. It was necessary to appoint guardians to represent the infants. It was their duty to urge with vigor any substantial claims of the infants. Here those claims were so substantial that they prevailed in the Appellate Division. The services rendered by the guardians were beneficial to the adverse parties, for without the presence of the guardians these parties could not have judicially established their claims. * * * Under these circumstances the Appellate Division had power to allow the guardians *ad litem* compensation for their services, payable by the adverse parties or out of the proceeds of the property which is the subject-matter of the action. Though the Appellate Division exercised its discretion at

a stage of the proceedings when there was an adjudication that the infants had an interest in the property, yet even now there are considerations present which would justify, even if they might not compel, the exercise of its discretion in similar manner."

In our opinion there is no justification for so large an allowance as was finally made by the circuit judge to the guardian *ad litem*. The reasonable value of the professional services rendered in this court upon the former appeal upon issue of title certainly did not exceed the value of the services rendered by the guardian *ad litem* in the trial court. Moreover, a thousand dollars would be a liberal allowance for the services rendered by the guardian *ad litem* in the circuit court after remand and up to and including final decree. The record discloses the number of times that it was necessary for the guardian *ad litem* to attend the circuit court and this court in Honolulu. An additional sum of $250 for traveling expenses would be reasonable. Taking into consideration the time and labor necessarily involved upon the appeal to this court upon the issue of title and the time and labor necessarily involved upon the proceedings in partition before the circuit judge after remand and up to and including final decree, in our opinion, a final allowance of the sum of $3250 would be reasonable under all of the circumstances. The amount allowed by the circuit judge is reduced accordingly. But the initial allowance of $2000 and the final allowance of $3250 should be allocated by the trial judge accordingly as the services rendered by the guardian *ad litem* and the expenses incurred were respectively rendered or incurred in the proceedings in partition or were occasioned by the contest as to the validity of the deed of March 6, 1915, and the respective amounts so allocated should be taxed accordingly.

The decree appealed from is accordingly reversed and

the cause remanded for further proceedings consistent with this opinion.

*P. Cass* and *P. Silver* (*T. E. M. Osorio* and *Cass & Silver* on the briefs) for respondents Lily Hewahewa and Thomas Kanamu Lalakea, a minor, by Lily Hewahewa, his guardian ad litem.

*W. B. Lymer* and *T. M. Waddoups* (*W. B. Lymer* on the briefs) for petitioners.

*H. Irwin* (also on the brief) for respondent Thomas Kanamu Lalakea, a minor, and the class whom he was appointed to represent, by H. Irwin, his guardian ad litem.

*H. Edmondson* (*Smith, Wild, Beebe & Cades* on the brief) for respondent and cross-complainant Laupahoehoe Sugar Company.