984 P.2d 1220

Howard K. LESLIE, Jr., Plaintiff–Appellant, and Leimomi Leslie Fresch, Individually, and as Next Friend for Howard K. Leslie, Jr., and Howard K. Leslie, Sr., Plaintiffs–Appellees,

v.

The ESTATE OF Jamie K. TAVARES, deceased, Defendant–Appellee, and John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; and Doe Entities 1–10, Defendants;

State of Hawai'i, Department of Human Services, Lien Holder–Appellee.

No. 21693.

Supreme Court of Hawai'i.

Aug. 31, 1999.

Frederick W. Rohlfing III, on the briefs, Lorrie Lee Stone, and J. Stevens Keali'iwahamana Hoag (of Rohlfing & Stone) for the plaintiff-appellant Howard K. Leslie, Jr.

Gary W.B. Chang, Honolulu, on the briefs, (of Matsui Chung Sumida & Chang) for the defendant-appellee The Estate of Jamie K. Tavares.

Joseph L. Wildman and Guy A. Sibilla, on the briefs, (of Sibilla & Wildman) for the plaintiffs-appellees Leimomi Leslie Fresch and Howard K. Leslie, Sr., joined in defendant-appellee The Estate of Jamie K. Tavares's Answering Brief.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, J.

Opinion of the Court by LEVINSON, J.

■ The plaintiff-appellant Howard K. Leslie, Jr. appeals from the circuit court's orders denying his (1) motion to (a) vacate the dismissal of his lawsuit against the defendant-appellee Estate of Jamie K. Tavares (hereinafter, "the Estate"), (b) rescind the settlement agreements and releases, and (c) reinstate his civil case against the Estate (hereinafter, "the motion to vacate") and (2) his motion to alter or amend the circuit court's findings of fact (FOFs), conclusions of law (COLs), and order concerning his motion to vacate. Leslie argues that the circuit court erred because (1) the Estate and its insurers were not entitled to deal directly with Leslie in reaching settlement agreements, inasmuch as the circuit court's appointment of Leimomi Leslie Fresch as Leslie's next friend rendered Leslie presumptively incompetent for purposes of the present litigation, (2) Fresch was not entitled to settle Leslie's claims against the Estate without the approval of the circuit court, and (3) the settlement agreements were unfair to Leslie. We agree with the first two of Leslie's points of error. With regard to his third, we hold that the circuit court failed adequately to analyze the fairness of the settlement agreements. Accordingly, we vacate the circuit court's order denying Leslie's motion to vacate and remand for further proceedings concerning the fairness of the settlement agreements.[1]

## I. BACKGROUND

On January 24, 1997, Fresch tendered an *ex parte* motion to the first circuit court for an order appointing her as next friend to Leslie, her son, for the purpose of prosecuting a claim on his behalf against the Estate arising out of an automobile accident, involving Tavares, in which Leslie was gravely injured. In an attached affidavit, Fresch's counsel averred in relevant part that Leslie "has been and is currently hospitalized in the Intensive Care Unit of Queen's Medical Center as a result of the injuries sustained" in the subject automobile accident and that Leslie was "incompetent to represent himself[.]" The circuit court granted Fresch's motion by order signed on January 30, 1997.

Also on January 24, 1997, Fresch's counsel mailed a demand letter on behalf of "Leimomi Fresch[,] as Next Friend for [Leslie]," to

---

1. Leslie's purported motion to alter or amend the circuit court's FOFs, COLs, and order consisted of nothing more than a request that the circuit court replace its findings, conclusions, and order with language favorable to Leslie and granting his motion. As such, Leslie's motion was, in reality, a *de facto* motion for reconsideration, raising no new arguments or newly discovered evidence. "The purpose of a motion for reconsideration is not to simply relitigate old matters, but to allow the parties to present new evidence or make fresh arguments that could not have been presented or made in the earlier proceed-

ing." *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Hawai'i 286, 296–97, 944 P.2d 83, 93–94 (App.1997) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 27, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citing *Gossinger v. Association of Apartment Owners of the Regency Ala Wai*, 73 Haw. 412, 426, 835 P.2d 627, 634–35 (1992)); *Briggs v. Hotel Corp. of the Pacific, Inc.*, 73 Haw. 276, 287 n. 7, 831 P.2d 1335, 1342 n. 7 (1992)). Accordingly, the circuit court did not abuse its discretion in denying that motion.

Liberty Mutual Insurance Company (Liberty Mutual), Tavares's automobile insurance carrier. Fresch's counsel alleged that Leslie's medical expenses had already exceeded $513,000.00 as of the date of the letter and were estimated eventually to total "$1,500,-000.00 [to][$]2,500,000.00." With the addition of pain and suffering, lost wages, and other damages, Fresch's counsel listed an "anticipated jury verdict" of "$3,030,796.70 [to][$]5,030,796.70." He offered to settle the claim for the policy limit of $250,000.00 if a response was received by January 31, 1997.

Apparently, no such agreement was immediately reached because, on February 3, 1997, Fresch's counsel filed a complaint against the Estate on behalf of Fresch, in her individual capacity and as next friend to Leslie, and Howard K. Leslie, Sr. (Howard), Leslie's father (collectively, "the plaintiffs"). The complaint alleged that, in the early morning hours of December 22, 1996, Leslie's truck was struck by a vehicle driven by Tavares, when Tavares negligently crossed the center lane of the Farrington Highway near Maili, in the City and County of Honolulu. As a result of the accident, the complaint alleged, Leslie "suffered severe injuries and/or severe physical pain and suffering and/or severe emotional and mental distress and/or medical and/or hospital expenses and/or loss of earnings and/or impairment of future earning capacity and/or loss of enjoyment of life and/or such other expenses ... as will be proven at time of trial." The complaint also alleged that Fresch and Howard had suffered "severe emotional and mental distress."

On May 7, 1997, Leslie apparently was released from the hospital and began living in Fresch's home in Waimānalo. According to the affidavit of Fresch's counsel, Leslie was an active participant in the proceedings against the Estate. On March 21, 1997, Leslie executed, in his own name, a contract for Fresch's counsel's legal services.

Subsequently, the plaintiffs reached settlement agreements with Liberty Mutual for bodily injury benefits from Tavares's policy and with Fireman's Fund Insurance Company, which was both Leslie's own underinsured motorist insurance (UIM) carrier and also the UIM carrier for KKL Trucking, Inc. (KKL), Leslie's employer and owner of the truck Leslie had been driving at the time of the accident. The plaintiffs—including Leslie—executed three releases associated with the three insurance policies. The releases did not indicate whether Fresch was signing solely in her individual capacity or also as next friend for Leslie. Neither did the releases indicate the apportionment of the settlement proceeds among the three plaintiffs; instead, they merely recited that the consideration for the releases was $250,000.00 in connection with Tavares's bodily injury policy, $35,000.00 in connection with Leslie's UIM policy, and $35,000.00 in connection with KKL's UIM policy.[2]

The record includes documents signed by Leslie purportedly authorizing Fresch's counsel to settle his claims against the three insurance policies in the gross amounts of $105,000.00, $16,000.00, and $16,000.00, respectively. Leslie's total net recovery, after accounting for attorneys' fees and costs, amounted to $89,290.99. The record also includes a letter from Fresch's counsel to Leslie, in which counsel notes that Fresch and Howard had each received gross recoveries from the three policies of $72,500.00, $9,500.00, and $9,500.00, respectively. The record is silent with regard to their net recoveries.

Pursuant to the parties' settlement agreements, Fresch's counsel filed a "Notice of Dismissal With Prejudice As To All Claims And Parties" on July 18, 1997, relying upon Hawai'i Rules of Civil Procedure (HRCP) Rule 41(a)(1)(A) (1996).[3] On April 1, 1998, Leslie filed a motion, pursuant to HRCP

---

2. The entire text of the three policies has apparently not been made part of the record on appeal. However, the record does include a "Declarations" page from Tavares's automobile policy, which indicates that she carried bodily injury liability coverage of "$250,000 EACH PERSON" and "$500,000 EACH ACCIDENT."

3. HRCP Rule 41(a)(1)(A) provides in relevant part that "an action may be dismissed by the plaintiff without order of court ... by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs[.]"

Rule 60(b) (1996),[4] to vacate the notice of dismissal, reopen the civil action, and rescind the settlement agreements and releases. A hearing was conducted on April 8, 1998, and the circuit court filed its FOFs, COLs, and order denying Leslie's motion on May 13, 1998. Among the circuit court's FOFs was a finding that the plaintiffs had settled for "the applicable policy limits" with regard to the three insurance policies involved in this case. In its COLs, the circuit court noted that, unlike HRCP Rule 55 (1996),[5] "[t]here is nothing in [HRCP] Rule 41 that precludes dismissal of an action by or on behalf of an infant or incompetent person." Moreover, the circuit court noted that HRCP Rule 17(c) (1996),[6] governing the appointment of next friends and guardians ad litem, makes no mention of court approval of settlements. Construing HRCP Rules 41 and 55 *in pari materia*, the circuit court concluded that "[t]he manifest policy is to reserve the most protective procedure of court review for default judgments *against* incompetents" and that court approval of settlements by a next friend to a plaintiff was, therefore, not required. (Emphasis in original.)

Alternatively, the circuit court ruled that it would decline to exercise its discretion to vacate the dismissal and rescind the settlement agreements because

> [t]he issues of apportionment of Plaintiffs' proceeds among family members is not governed by any of the settlement agreements, is not amenable to resolution by reopening the case, and thus constitutes a "dispute regarding the agreement [which] is totally separate and distinct from the dispute underlying the original action." *Gilmartin v. Abastillas,* 10 Haw.App. 283, 295 [869 P.2d 1346, 1352] (1994). Similarly, [Leslie's] concerns regarding different theories of liability against other potential defendants who were not pursued in this action may be claimed in new actions which are not yet barred by the statute of limitations.

On May 26, 1998, Leslie filed a motion to alter or amend the circuit court's FOFs, COLs, and order. *See supra* note 1. The Estate filed a memorandum in opposition to the motion on June 2, 1998. Additionally, Fresch and Howard filed a memorandum in opposition to the motion on June 3, 1998. On June 18, 1998, the circuit court filed its first amended FOFs and COLs, in which the circuit court added a discussion of *Green v. Nevers,* 111 F.3d 1295 (6th Cir.), *cert. de-*

**4.** HRCP Rule 60(b) provides in relevant part that, "[u]pon motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceedings for ... any ... reason justifying relief from the operation of the judgment."

**5.** HRCP Rule 55 provides in relevant part:
**Default.**
(a) **Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.
(b) **Judgment.** Judgment by default may be entered as follows:
(1) *By the Clerk.* When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if he has been defaulted for failure to appear *and if he is not an infant or incompetent person.*
(2) *By the Court.* In all other cases the party entitled to a judgment by default shall apply to

the court therefor; but *no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a guardian,* or other representative who has appeared therein, and upon whom service may be made under Rule 17. . . .
(Emphases added.)

**6.** HRCP Rule 17(c) provides:

**Infants or Incompetent Persons.** Whenever an infant or incompetent person has a guardian, whether appointed as to his person or property, such guardian as to his property, or if no guardian has been appointed as to his property, then such guardian appointed as to his person, may sue or defend on behalf of the infant or incompetent person. *If an infant or incompetent person does not have a duly appointed guardian he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.*
(Emphasis added.)

*nied,* —— U.S. ——, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997), and *Crawford v. Loving,* 84 F.R.D. 80 (E.D.Va.1979), noting that those decisions had held that trial courts have the inherent power to vacate a stipulated dismissal in the interests of justice. The circuit court then ruled that no such action was necessary in the present case:

> In the specific circumstances of this case, including that the settlement documents were executed by [Leslie] after he was discharged from hospitalization for rehabilitation and each of the three settlement amounts were for policy limits and that none of them addressed apportionment of the proceeds, this Court declines to exercise its inherent power to set aside the dismissal for the purpose of subjecting the terms of settlement to further court review. The Court is satisfied that exercise of [its] inherent power to set aside the dismissal is not necessary to prevent unfair results or to correct a wrong.

On that same day, the circuit court filed an order, "[p]ursuant to the First Amended Findings of Fact and Conclusions of Law filed June 18, 1998," denying Leslie's motion to alter or amend.

Leslie filed a timely notice of appeal on July 10, 1998.

## II. *STANDARDS OF REVIEW*

### A. *Motions For Relief From Judgment*

A circuit court's denial of a motion for relief from judgment filed pursuant to HRCP Rule 60(b) is reviewed for abuse of discretion. *See Kawamata Farms, Inc. v. United Agri Products,* 86 Hawai'i 214, 256, 948 P.2d 1055, 1097 (1997) (quoting *Hawai'i Hous. Auth. v. Uyehara,* 77 Hawai'i 144, 147, 883 P.2d 65, 68 (1994)). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Kotis,* 91 Hawai'i 319, 329, 984 P.2d 78, 88 (1999) (citations and internal quotation marks omitted).

### B. *Findings Of Fact And Conclusions Of Law*

■ We review a trial court's FOFs under the clearly erroneous standard.

"A[n] [FOF] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *State v. Kane,* 87 Hawai'i 71, 74, 951 P.2d 934, 937 (1998) (quoting *Aickin v. Ocean View Investments Co.,* 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (quoting *Dan v. State,* 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994))). An FOF is also clearly erroneous when "the record lacks substantial evidence to support the finding." *Alejado v. City and County of Honolulu,* 89 Hawai'i 221, 225, 971 P.2d 310, 314 (App.1998) (quoting *Nishitani v. Baker,* 82 Hawai'i 281, 287, 921 P.2d 1182, 1188 (App.1996)). *See also State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995). "We have defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998) (quoting *Kawamata Farms v. United Agri Products,* 86 Hawai'i 214, 253, 948 P.2d 1055, 1094 (1997) (quoting *Takayama v. Kaiser Found. Hosp.,* 82 Hawai'i 486, 495, 923 P.2d 903, 912 (1996) (citation, some internal quotation marks, and original brackets omitted))).

*Kotis,* 91 Hawai'i at 328, 984 P.2d at 87 (footnote omitted) (brackets in original).

Hawai'i appellate courts review conclusions of law de novo, under the right/wrong standard. *See Associates Fin. Services Co. of Hawaii, Inc. [v. Mijo],* 87 Hawai'i [19] at 28, 950 P.2d [1219] at 1228. "Under the right/wrong standard, this court 'examine[s] the facts and answer[s] the question without being required to give any weight to the trial court's answer to it.'" *Estate of Marcos,* 88 Hawai'i at 153, 963 P.2d at 1129 (citation omitted).

*Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Co., Inc.,* 91 Hawai'i 224, 239, 982 P.2d 853, 868 (1999).

## III.  DISCUSSION

### A.  Neither The Estate Nor The Insurance Carriers Were Entitled To Deal Directly With Leslie In Concluding A Settlement Agreement Inasmuch As He Was Represented By A Next Friend.

HRCP Rule 17(c) allows the trial court to appoint a next friend or guardian ad litem [7] for a minor or incompetent person for purposes of prosecuting a lawsuit.  *See supra* note 6.  The appointment of a next friend presupposes a finding by the trial court that the affected party labors under a disability, making it necessary for another person to represent his or her interests in the litigation.[8]  *See, e.g., Nawahie v. Peterson,* 24 Haw. 558, 562 (1918) ("A next friend or *prochein ami* is not a party to the suit, but simply a person appointed by the court to look after the interests of one who[,] by reasons of some legal disability[,] is unable to look after his own interests, and to manage the suit for him."  (Citation and internal quotation marks omitted.)).

The purpose of appointing a guardian ad litem is to protect the person under disability.  Indeed, courts should appoint guardians ad litem for parties litigant when reasonably convinced that a party litigant is not competent, understandingly and intelligently, to comprehend the significance of legal proceedings and the effect and relationship of such proceedings in terms of the best interests of such party litigant.

*State ex rel. McMahon v. Hamilton,* 198 W.Va. 575, 482 S.E.2d 192, 200 (1996) (citations and internal quotation signals omitted).  *A fortiori,* a party represented by a next friend by reason of incompetence may not personally authorize a release—or other waiver of his or her rights in a lawsuit—incident to a settlement agreement.  *See Crawford v. Loving,* 84 F.R.D. 80, 87 (E.D.Va.1979) ("[S]ince the real party is incompetent, he is presumed legally incapable of signing such a document.").

The Estate does not appear to dispute the above-stated principles, but nevertheless relies on Leslie's own ratification of the settlement agreement.  The Estate suggests that Leslie regained his competency at some point prior to his execution of the relevant settlement agreements,[9] at which time Fresch's status as next friend automatically terminated, even though no motion was brought before the circuit court, and the circuit court took no action on the issue.  In support of its contention, the Estate cites language from

---

7.  Traditionally, and in some jurisdictions to this day, the term "next friend" was applied to appointed representatives of parties *plaintiff,* whereas "guardian ad litem" applied to the representative of parties *defendant.  See, e.g., LaRosa v. Lupoli,* 44 Conn.App. 225, 688 A.2d 356, 358 (O'Connell, J., concurring), *certification denied,* 240 Conn. 918, 692 A.2d 813 (1997); *S.J.V. ex rel. Blank v. Voshage,* 860 S.W.2d 802, 804 (Mo. Ct.App.1993).  In other jurisdictions, the terms have come to be employed interchangeably.  *See, e.g., The Judge Rotenberg Educational Center v. Commissioner of the Dep't of Mental Retardation,* 424 Mass. 476, 677 N.E.2d 156, 157 n. 3 (1997).  HRCP Rule 17(c) appears to be aligned with the latter approach.  *See supra* note 6. In any event, even in the jurisdictions recognizing the formal distinction, it is acknowledged that the function and duties of a next friend and a guardian ad litem are essentially the same.  *See, e.g., Larosa,* 688 A.2d at 358 (O'Connell, J., concurring); *In re R.P.D. ex rel. Dick,* 708 N.E.2d 916, 918 (Ind. App.Ct.1999); *Sparks v. Boggs,* 839 S.W.2d 581, 583 (Ky.Ct.App.1992); *S.J.V. ex rel. Blank,* 860 S.W.2d at 804.

8.  As the Estate points out, the appointment of a guardian ad litem or next friend pursuant to HRCP Rule 17(c) does not operate as a *general* adjudication of incompetency.  *See State ex rel. McMahon v. Hamilton,* 198 W.Va. 575, 482 S.E.2d 192, 201 (1996) (noting that "[a] party who has not been adjudicated incompetent may, nevertheless, lack the mental capacity to participate in a matter before the court," inasmuch as "[a]n individual may be competent for one purpose but not for another" (citations and internal quotation marks omitted)).  As discussed more fully *infra,* in contrast to a guardian of the person or a guardian of the property, the powers of a guardian ad litem or next friend to act on behalf of a ward are strictly circumscribed by the court's own responsibility to ensure that the interests of the ward are not compromised.

9.  The parties dispute whether the evidence in the record demonstrates Leslie's continuing incompetence.  Based on our holding, *infra,* that, as a general rule, the *trial court* must make the determination whether a party has regained competence, we need not address the merits of the parties' arguments on this question.

two treatises on federal practice. In the first of these treatises, the authors observe that

> [t]he authority of a representative under Rule 17(c) does not necessarily survive until the action has been terminated; rather, his power is dependent upon the continued disability of the person being protected. *State law controls the question whether the represented party's disability has ended* during the action and *once it is determined that this has occurred,* the fiduciary loses authority to maintain the suit on behalf of the former infant or incompetent. *One view is that a guardian ad litem's power expires as a matter of law upon termination of the disability.* As a matter of good practice, it probably always is wise to seek the formal removal of the guardian by motion and this procedure has been required by one federal court.

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1570, at 507 (1990) (emphases added) (footnotes omitted) (hereinafter, *Federal Practice and Procedure*). However, as the portions highlighted above indicate, the quoted text offers only the faintest support to the Estate's assertion that the determination of a party's return to competency may be made by the opposing party or the allegedly incompetent party himself without the participation of the trial court. It is noteworthy, moreover, that the cases upon which the authors of *Federal Practice and Procedure* authors rely concern minors reaching the age of majority. *See Mason v. Royal Indem. Co.,* 35 F.Supp. 477 (D.Ga.1940), *aff'd on other grounds,* 123 F.2d 335 (5th Cir.1941); *Ju Shu Cheung v. Dulles,* 16 F.R.D. 550 (D.Mass.1954). Certainly, as Leslie observes, the determination of a party's age is, by its nature, less controversial and difficult than the determination of a party's competence.

The second treatise quoted by the Estate states that "a representative's appointment automatically terminates when the person represented sheds the disability that led to [the] need for a representative." J. Moore, *Moore's Federal Practice* § 17.28, at 17–116 to 17–117 (3d ed.1999). Curiously, Moore relies on *Ju Shu Cheung,* in which the court

expressly required the parties to bring the issue of the loss of the minor's legal disability, *i.e.,* his achievement of the age of majority, before it in the form of a motion to dismiss the minor's next friend. *See* 16 F.R.D. at 553. Like *Federal Practice and Procedure,* Moore's text does not address the case of an *adult* regaining competence during the pendency of a lawsuit.

We believe that the more rational approach is that any question regarding the continuing incompetence of an adult party for whom a next friend has previously been appointed must be raised before the trial court. *Cf. Nawahie ex rel. Lamnui v. Kamalani,* 24 Haw. 82, 85 (1917) (holding, where the alleged incompetent disputed the issue of his competence, that the issue was one for the trial court to determine); *McMahon,* 482 S.E.2d at 201 ("When a substantial question exists regarding the mental competency of a party, a court must determine whether the party is or is not competent to proceed with the action before it." (Citation omitted.)). Absent an order from the trial court removing the next friend, the represented party remains presumptively incompetent for purposes of the litigation. Accordingly, the opposing party is *not* entitled to rely upon a settlement agreement signed by the incompetent party. *Cf. Christian ex rel. Von Holt v. Waialua Agricultural Co., Ltd.,* 31 Haw. 817, 873 (1931) (noting that an adjudication of incompetence "would be notice to the world [of the incompetent's] mental state and whoever dealt with [him or] her would do so at his [or her] peril").

We therefore hold that Leslie's signatures on the settlement agreements and his apparent authorization of the dismissal of his own claims were not binding against him.

### B. *Fresch Was Required To Obtain The Circuit Court's Approval Of The Settlement Agreements.*

Fresch also signed and apparently approved the settlement agreements in this case. It is unclear whether she meant to do so in her capacity as next friend or merely in her capacity as coplaintiff. Assuming, *arguendo,* that Fresch *did* purport to execute the agreements in her capacity as Leslie's

next friend, we hold that her "authorization" was insufficient to validate the agreements with regard to Leslie in the absence of the circuit court's approval.

In *Lalakea v. Laupahoehoe Sugar Co.*, 35 Haw. 262 (1939), *reh'g denied*, 35 Haw. 349 (1940), this court addressed a stipulation to a consent decree concerning the partition of a parcel of real property, entered into by the guardian ad litem of a minor without judicial inquiry into the fairness of the agreement. The *Lalakea* court observed that

> [c]ourts have always been exceedingly zealous in guarding the rights and interests of minors. They have usually permitted guardians and guardians ad litem to do such things as were clearly to the advantage of the ward, and *when the advantage to the ward was not clear[,] they have instituted inquiry, and have sometimes referred the question of advantage to a master, before giving heed to the agreement of such guardian.* The agreement of the guardian ad litem in regard to mere formal matters, such as relate to the speeding of the cause, as, for instance, entering into a stipulation to transfer the case from one court to another court of like jurisdiction, has been sanctioned. On the other hand, courts have refused to permit a guardian ad litem to make an agreement that the decision in one case shall determine that in another, although the cases involve precisely the same facts and the same parties, and substantially the same points of controversy, on the ground that a guardian ad litem had but one duty to perform, and that was to defend the suit. *The courts have been practically unanimous in holding that a guardian ad litem can admit nothing against and waive nothing in favor of his ward[.]*

*Id.* at 283 (citations and internal quotation marks omitted) (emphases added). Based on its extensive survey of the then-current case law, the *Lalakea* court held that

> it may be said to be the settled rule in this State and elsewhere that a next friend or guardian ad litem cannot[,] by admission or stipulation[,] surrender the rights of the infant. It is the duty of the court to protect the interests of the infants, and to

see to it that their rights are not bargained away by those who represent them.

*Id.* at 285 (emphasis added). The *Lalakea* court further ruled that, "where the consent decree waives or surrenders substantial rights of the minor, the decree will not be binding because it would denote a surrender of the rights of the infant without investigation by the court." *Id.* at 283. *See also In re Estate of Campbell*, 46 Haw. 475, 529, 382 P.2d 920, 956–57 (1963) (holding that a stipulation entered into by a guardian ad litem without investigation by the court was "not binding under the rule of *Lalakea* "); *In re Estate of Campbell*, 42 Haw. 586, 610 (1958) (noting, pursuant to *Lalakea*, that "the court may not blindly rubber stamp the action of a guardian ad litem"). We can discern no reason why a different rule should apply to adult incompetents represented by a next friend. *Cf. Centala v. Navrude*, 30 Mich.App. 30, 186 N.W.2d 35, 36 (1971) (holding that prior Michigan case law requiring trial courts to approve settlement agreements made by the guardians of minors applied likewise to settlements agreed to by the guardians of adult incompetents).

As Leslie points out, a number of other jurisdictions share the position that the trial court must approve a settlement agreement negotiated by a next friend or guardian ad litem. *See, e.g., Kingsbury v. Buckner*, 134 U.S. 650, 680, 10 S.Ct. 638, 33 L.Ed. 1047 (1890); *Green*, 111 F.3d at 1300–01; *Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9th Cir.1978); *Crawford*, 84 F.R.D. at 87; *Walker v. Stephens*, 3 Ark.App. 205, 626 S.W.2d 200, 205 (Ark.Ct.App.1981); *Ott v. Little Company of Mary Hospital*, 273 Ill.App.3d 563, 210 Ill.Dec. 75, 652 N.E.2d 1051, 1057, *appeal denied*, 164 Ill.2d 567, 214 Ill.Dec. 323, 660 N.E.2d 1272 (1995); *Centala*, 186 N.W.2d at 36; *Kress v. Lederle Laboratories*, 901 S.W.2d 206, 208 (Mo.Ct.App.1995); *Ballard v. Hunter*, 12 N.C.App. 613, 184 S.E.2d 423, 427 (1971), *cert. denied*, 280 N.C. 180, 185 S.E.2d 704 (1972); *Rexroat v. Prescott*, 570 S.W.2d 457, 459 (Tex.Ct.App.1978); *but see Baker v. Binder*, 34 Mass.App.Ct. 287, 609 N.E.2d 1240, 1243 (1993) (holding that, "in the absence of special circumstances, such as fraud, bad faith, or conscious disre-

gard of a minor's interests, a settlement for a minor will not be set aside because it was the product of the parties' agreement").

The Estate relies upon *Eagan v. Jackson,* 855 F.Supp. 765, 775 (E.D.Pa.1994), in which the United States District Court for the Eastern District of Pennsylvania concluded that Federal Rules of Civil Procedure (FRCP) Rule 17(c), which is substantially similar to HRCP Rule 17(c), does *not* authorize a court to issue an order approving a proposed settlement agreement. However, having ruled that FRCP Rule 17(c) was not the source of such a power, the *Eagan* court proceeded to rule that "the more certain sources for this Court's authority to approve the settlement of the case is the state law that this Court must apply,[10] *as well as the Court's inherent duty to protect the interests of minors and incompetents that come before it." Id.* (emphasis added). The *Eagan* court quoted the following description of the court's inherent power from the decision of the United States Court of Appeals for the Ninth Circuit in *Dacanay,* 573 F.2d at 1079:

> It is an ancient precept of Anglo–American jurisprudence that infant and other incompetent parties are wards of any court called upon to measure and weigh their interests. *While the infant sues or is defended by a guardian ad litem or next friend, every step in the proceeding occurs under the aegis of the court.*

*Id.* (emphasis added).

■ We agree with the *Eagan* court's conclusion that the trial court's power and responsibility to approve a proposed settlement of a ward derives from its common law inherent power, rather than from the plain language of HRCP Rule 17(c). As implied by *Eagan,* moreover, we hold that the HRCP present no impediment to the foregoing power and duty. We reject the circuit court's reasoning that, merely because HRCP Rule 55 expressly provides that default is not to be entered against an infant or incompetent under certain circumstances, and HRCP Rule

41(a)(1)(A) contains no express provision for the trial court's review of a settlement agreement executed by a next friend, the protection of the HRCP is "manifestly" limited to the interests of minors and incompetent party *defendants* and does not extend to minors and incompetent *plaintiffs.* Such an interpretation does not comport with the HRCP's goal of "reflect[ing] the essentials of due process and fair play," *see Bank of Hawaii v. Horwoth,* 71 Haw. 204, 216, 787 P.2d 674, 681 (1990), or the prescription of HRCP Rule 1 (1996) that the rules "shall be construed to secure the just ... determination of every action." *Cf. Green,* 111 F.3d at 1300–01 (rejecting a similar argument raised with respect to FRCP Rule 41(a)(1)).

■ Accordingly, we adhere to our decision in *Lalakea* and hold that the next friend of an incompetent adult may not validate a settlement agreement on behalf of the incompetent party without the approval of the court.

C. *The Circuit Court Abused Its Discretion In Failing To Assess The Fairness Of The Apportionment Of The Settlement Proceeds.*

In its amended COLs, the circuit court ruled that, "[i]n the specific circumstances of this case," the "exercise of inherent power to set aside the dismissal is not necessary to prevent unfair results or to correct a wrong." We interpret the circuit court's COL as essentially deciding, notwithstanding Leslie's rejection of the settlement agreements, that the agreements were fair and should remain in force. In arriving at the foregoing conclusion, the circuit court expressly declined to investigate the fairness of the apportionment of the settlement proceeds among the plaintiffs. We hold that the circuit court thereby abused its discretion.

■ The parties appear to agree with the circuit court that the settlement amounts were for "policy limits" with respect to all three policies.[11] However, Leslie complains

10. The state law to which the *Eagan* court referred was a New Jersey statute. *Id.*

11. Inasmuch as Fresch and Howard appeared to assert claims for relief for negligent infliction of

emotional distress, their claims were derivative of Leslie's claim for personal injury. *Cf. Tabieros v. Clark Equip. Co.,* 85 Hawai'i 336, 361, 944 P.2d 1279, 1304 (1997) (noting that, "[u]nder Hawai'i law, a spouse's claim of emotional dis-

that the apportionment of the settlement proceeds was unfair as to him.[12] The record indicates that Leslie was apportioned $105,000.00 of the $250,000.00 Liberty Mutual settlement and $16,000.00 of the $35,000.000 settlement amounts derived from each of the two UIM policies. Accordingly, although Leslie was unquestionably the primary injured party, he received less than half of the total recovery.

Relying on the Intermediate Court of Appeals' (ICA) decision in *Gilmartin*, the circuit court ruled that it need not consider the fairness of the apportionment between the plaintiffs because it "constitute[d] a 'dispute regarding the agreement [which] is totally separate and distinct from the dispute underlying the original action.' " *Gilmartin*, however, is inapposite.

In *Gilmartin*, the plaintiff filed a motion for the *enforcement* of a settlement agreement with the trial court after a dispute developed between the parties as to its terms. 10 Haw.App. at 287, 869 P.2d at 1348–49. The ICA held that a trial court may, in its discretion, grant a motion to vacate a prior dismissal and enforce a settlement agreement but that,

> if a motion to vacate a prior dismissal and enforce a settlement agreement is brought years after the original action was terminated, or the dispute regarding the agreement is totally separate and distinct from the dispute underlying the original action, a trial court could, in the exercise of its discretion HRCP Rule 60(b), decline to vacate a prior dismissal.

*Id.* at 295, 869 P.2d at 1352.

As Leslie points out, the motion under consideration in this case was not proffered for purposes of enforcing a settlement agreement; rather, it sought recission of the agreement. Moreover, unlike the parties in *Gilmartin*, neither Leslie nor Fresch possessed the independent authority to ratify the settlement agreement in the first instance.

In *Dacanay*, a minor's guardian ad litem initially concurred in a settlement agreement but then repudiated it prior to the trial court's approval. *Id.* at 1077. The Ninth Circuit held that a guardian ad litem may repudiate his or her approval of a settlement agreement on behalf of his or her ward if he or she does so prior to the trial court's approval, so long as the repudiation is not "arbitrar[y] and capricious[ ] in the sense that [the guardian ad litem's] conduct is inimical to the best interests of the court's ward." *Id.* at 1080. If the trial court finds that the repudiation *is* arbitrary and capricious, it may approve the settlement despite the guardian ad litem's change of heart. *Id.* In this way, the guardian ad litem's opinion is accorded some degree of deference, but the court does not "surrender" its jurisdiction over the ward to its officer. *Id. See also Scruton v. Korean Air Lines Co., Ltd.*, 39 Cal.App.4th 1596, 46 Cal.Rptr.2d 638, 644 (1995) (holding that a trial court could not "unilaterally and summarily enforce the repudiated compromise without first determining whether in rejecting the agreement [the guardian ad litem] had acted contrary to the best interests of the minors").

In the present case, it is the ward himself, rather than the next friend, who has

---

tress, based on an injury to her husband, is a 'derivative' claim sounding in tort)" (citing *Brown v. KFC Nat'l Management Co.*, 82 Hawai'i 226, 240–41, 921 P.2d 146, 160–61, *reconsideration denied*, 82 Hawai'i 360, 922 P.2d 973 (1996) (citation omitted)). Although the "Declarations" page of Tavares's Liberty Mutual bodily injury policy recited a "per accident" policy limit of $500,000.00, this court has held that "claims for loss of consortium, mental anguish, and derivative medical expense do not activate [a liability] policy's 'per accident' limits where only one person sustained injury or death in the accident." *First Ins. Co. of Hawai'i v. Lawrence*, 77 Hawai'i 2, 10, 881 P.2d 489, 498 (quoting G. Schermer, *Automobile Liability Insurance* § 25.02(1)

(1989)), *reconsideration denied*, 77 Hawai'i 373, 884 P.2d 1149 (1994) (emphasis in original omitted).

12. Leslie also claims that the settlement agreements could potentially reduce the amount of damages he might recover from joint tortfeasors, such as a provider of alcohol to Tavares or Tavares's mother, if she were liable for negligent entrustment. As the circuit court pointed out, however, these theoretical problems are speculative, at best, inasmuch as Leslie has not shown that he has attempted to file any additional claims or to join other alleged tortfeasors in the present lawsuit.

attempted to repudiate the settlement agreements. Leslie's next friend opposes Leslie's action, as evidenced by her memorandum in opposition to Leslie's motion to vacate. Because Leslie is presumptively incompetent to manage the litigation, his repudiation of the settlement agreements may not merit the same level of "deference" as the repudiation of a next friend. *But cf. Christina B. v. Agatha B.*, 19 Cal.App.4th 1441, 23 Cal. Rptr.2d 918, 926–27 (1993) (holding that, "while the [trial] court properly found [that the ward] was unable to assist counsel in preparing her case, the record fails to show [that] she was incapable of expressing her wishes and exercising the judgment necessary to determine whether to waive her trial rights"). At the very least, however, Leslie retains the power to direct the circuit court's attention to its *own* duty to insure that any settlement agreement is fair to its ward. *See* discussion *supra* in section III.B. It is intuitively obvious, in order for such an inquiry to actually protect the interests of the ward, that the inquiry *must* extend to an assessment of the fairness of the apportionment of the proceeds among the plaintiffs.

■ The circuit court's duty in this regard was rendered all the more crucial by Fresch's apparent conflict of interest. As a coplaintiff, Fresch's self-interest regarding her personal share of the aggregate settlement proceeds was plainly adverse to her fiduciary duty to maximize the result for Leslie. *See Grunewald v. Technibilt Corp.*, 931 S.W.2d 593, 597 (Tex.Ct.App.1996) ("A [next friend] must act as a fiduciary with respect to the [ward's] interests. As a fiduciary, the [next friend's] duty to the [ward] is one of integrity, loyalty, and the utmost good faith." (Citation omitted.)). Accordingly, her proposed apportionment should have been closely scrutinized by the circuit court. We hold that the circuit court's refusal to address the issue constituted an abuse of discretion.

## IV. CONCLUSION

■ We are hesitant to usurp the proper role of the circuit court by rendering our own independent judgment regarding the fairness of the apportionment of settlement proceeds. Accordingly, based on the foregoing analysis, we vacate the circuit court's order denying Leslie's motion for an order vacating the stipulated dismissal and for rescission of the settlement agreements and remand for further proceedings, consistent with this opinion, concerning the fairness of the apportionment. In light of this court's historic interest in protecting the rights and interests of wards of the court, *see Lalakea*, 35 Haw. at 283, we hold that Fresch, as Leslie's next friend, will bear the burden of demonstrating to the circuit court that the apportionment was fair to Leslie.